## PARKER v. FENWICK.

### (Filed April 25, 1905.)

*Sales—Breach of Contract—Waiver—Acceptance after Discovery of Defects—Action on Warranty—Proof—Measure of Damages.*

1. A vendee in a contract for the sale of a machine of a specified quality is entitled to a reasonable time to investigate to discover any such defects as are covered by the contract, but if after discovering the defects, he accepts and uses the machine as his own for two years without any suggestion of a defect other than that discovered upon its receipt, making payments on the contract, he thereby waived any claim for damages for such defects.

2. A vendee may sue upon a warranty of soundness in a contract for the sale of personalty as collateral to the contract of purchase.

3. In an action on a warranty, the vendee is required to prove nothing but the contract of warranty, breach thereof and his damages.

4. The measure of damages for the breach of a contract for the sale of a machine is "the difference between the value of the property received and what it would have cost the defendant to purchase such machinery as that described in the contract and warranty."

ACTION by *C. W. Parker* v. *J. B. Fenwick,* heard by *Judge E. B. Jones* and a jury at the December Term, 1904, of the Superior Court of FORSYTH County. From a judgment for the defendant, the plaintiff appealed.

Plaintiff, being a resident of Kansas, sold to the defendant, a resident of Forsyth County, in this State, one merry-go-round with attachments, for the sum of $2,000, defendant paying $1,000 cash and giving his promissory notes payable monthly, for the balance. To secure said notes defendant executed a chattel mortgage on the property. A contract was made by correspondence between the parties, all of which

138—14

is set out in the record.    The property was shipped to the defendant on March 23, 1901, and received on April 5th.    Defendant wrote plaintiff on April 13, 1901, that the property had arrived, mentioned several defects, etc., in regard to which they had some correspondence.    On April 24, defendant wrote to plaintiff "The machine is running alright and the shooting gallery draws out the best people in the city; am much pleased with it."    On May 5 he wrote plaintiff enclosing $100 for note due June 1st, and inquiring as to the lowest amount he would take for the 10 notes unpaid.    A correspondence was carried on between the parties in regard to the payment of the notes as they fell due.    There was no suggestion in any of the letters of any defect in the machine until just before the date of the summons, April 7, 1903. The defendant continued to make payments until they aggregated something over $1,400, leaving a balance due at the institution of this suit of $795.    Defendant, by way of counterclaim, alleged that the plaintiff represented that the machine and its appurtenances were of the very best make and up-to-date; the best of its kind on the market, and that he was induced by such representations to agree to pay therefor the sum of $2,000.    That it was not a good machine and up-to-date, but on the contrary was old fashioned and out of date and could not do the work as represented by plaintiff, and that by reason of the false representations made by plaintiff, defendant had been damaged in excess of the balance due, in the sum of $500.    To this counter-claim plaintiff filed a reply denying the material allegations.    The court submitted the following issues to the jury:  1. What amount, if any, is defendant indebted to plaintiff upon notes sued on and described in complaint?    Ans. $795.06.    2. What amount, if any, is plaintiff indebted to defendant upon counterclaim set up in the answer?    Ans. $952.    3. What is the value of said property described in complaint now?    Ans. $200.    4. Is the plaintiff the owner and entitled to the pos-

session of the property described in the complaint? Ans. No."

The correspondence between the parties was put in evidence and plaintiff testified that the machine was delivered according to contract and complied with the representations. Defendant testified in regard to the defects which he said he discovered very soon after putting the machine to work. In his answer he says: "Soon after its arrival here, after defendant had paid as much as $1,400 on the machine, being entirely ignorant of the operation of machines of this character, he ascertained it was an old fashioned, out of date machine, which could not do the work that it was represented to him by the plaintiff to do, and that by reason of the fraudulent representations he was induced to part with his money." From a judgment on the verdict, the plaintiff appealed.

*L. M. Swink* for the plaintiff.
*Watson, Buxton & Watson* for the defendant.

CONNOR, J., after stating the facts: We have carefully read the correspondence which constitutes the contract between plaintiff and defendant. We fail to find any suggestion from defendant that the machine was not as represented by plaintiff, except that in his letter of April 13, 1901, he mentioned that some injury was done to the organ by the movement of the engine on the cars; that there was no flag pole or pulleys and that the outfit was short two tent poles. After mentioning these, he says: "I had great trouble in putting the machine up and getting it to run a track, but have overcome all that now and do not expect any more trouble. You ought to make good all things that are short. I am pleased with everything but tent which was torn in several places." He then proposed to act as agent for the plaintiff in the sale of these machines. He also said that as soon as he could do some business, he will want another shooting gallery.

In the same letter he says that his shooting gallery is draw-
ing out the best people so far.  Plaintiff promptly replied to
this letter noting the complaints made, to which defendant
responded on April 24 that the machine was then running all
right and that he was much pleased with it.  After these
letters we find no further complaint in regard to the mat-
ters referred to.  The defendant did complain that he had
been sick and had been prevented, by various causes, from
doing a successful business.  He made frequent remittances
on the notes and asked for further time by reason of poor
business, sickness, etc.  We find nothing in the defendant's
testimony inconsistent with his letters.

Plaintiff requested the court to instruct the jury that "If
the jury find from the evidence that the defendant ascer-
tained that the machine did not come up to the representa-
tions made of it by plaintiff, but that defendant continued
to use the machine with knowledge of the fact that it did not
comply with the representations of plaintiff, and that defend-
ant made payments on the contract, this would be a waiver
of any warranty or representation and they should answer
the second issue 'nothing.' "  His Honor modified the in-
struction by inserting between the words "defendant" and
"ascertained," the words "After having a reasonable time to
investigate."  To this modification plaintiff excepted.  We
are of opinion that in the light of defendant's testimony, the
instruction should have been given as asked.  There can be
no doubt that the general proposition involved in the instruc-
tion as given is correct.  The defendant was entitled to a
reasonable time to investigate for the purpose of discovering
any such defects in the machine as were covered by the con-
tract.  The plaintiff was not controverting this proposition,
but was insisting that the defendant, on his own showing,
had in fact ascertained—discovered—every alleged defect
and after such discovery had accepted and used the machine,
paying a portion of the purchase money.  The only question

of law presented upon this hypothesis, which we think was
sustained by the evidence, was the duty of the defendant
after such discovery. Could he accept the machine, use it
as his own for two years, during which time, according to his
own testimony, its value was reduced to $200, and then re-
fuse to pay for it, retaining the property and recovering dam-
ages for defects, which he admits were known to him almost,
if not quite, at the time the machine was received? He is not
setting up a counterclaim for a breach of an express warranty
in respect to quality. He purchased from plaintiff and was
entitled to demand "a merry-go-round of my (plaintiff's)
manufacture . . . as good as was ever put on the mar-
ket." It had been run thirty days at a street fair. Plaintiff
was to "thoroughly repaint and varnish it" and to make it
"as good as a new merry-go-round." Defendant does not
allege that this was an express warranty as to quality of ma-
terial, etc. The relative rights and duties of the parties is
thus stated: "There is no dispute as to the rule of law touch-
ing the rights of parties under an executory contract for
the future sale and delivery of goods of a specified quality,
in the absence of an express warranty. The quality is a part
of the description of the thing agreed to be sold and the ven-
dor is bound to furnish articles corresponding with the des-
cription. If he tenders an article of an inferior quality the
purchaser is not bound to accept it. But if he does accept it,
he is, in the absence of fraud, deemed to have assented that
it corresponded with the description and is concluded from
subsequently questioning it. This imposes on the vendee the
duty of inspecting before accepting, if he desires to save his
rights in case the goods are of inferior quality." *Pierson v.
Crooks,* 115 N. Y., 539.

*Church, C. J.,* in *Dutchess Co. v. Harding,* 49 N. Y., 321,
says: "The acceptance of the property under such a contract
implies a consent or agreement on the part of the vendee that
the quality is satisfactory and is conclusive upon him. He

PARKER *v.* FENWICK.

is not bound to accept a different article from that contracted for and he is entitled to an opportunity or examination. The agreed quality is regarded as a part of the contract of sale itself, and not as a warranty or agreement collateral to it. In such a case the vendee must immediately rescind the contract and return, or offer to return the goods, or he will be foreclosed from all claim. He cannot retain the property and afterwards sue for damages on account of the inferior quality."·

*Danforth J.,* in *Brown v. Foster,* 108 N. Y., 387, in discussing this question, says: "The plaintiff then became subject to the general rule that one who seeks to reject an article as not in accordance with the contract, must do nothing after he discovers its true condition, inconsistent with the vendor's ownership of the property. He would, in such a case as the present, be entitled to a reasonable time for examination; long enough to put the machinery in operation and see it operate, and he might for that purpose do with it whatever was necessary, and, if after such examination without dealing with it in any other way, or for any other purpose, he rejected it, acceptance could not be implied . . . He used the machine in the prosecution of his business and although complaining it did not intermit defendant's use. Knowing the defects he continued to run it. His intent in so doing may be gathered from his acts as well as from his words, and it could not be said as matter of law these acts did not afford substantial proof of an acceptance, not for the purpose of examination, but for use. . . . The continued use of the machine in the promotion of his own business interests with knowledge of its imperfections was an unequivocal act of acceptance which no words of his own could qualify."·

In *Reid v. Randall,* 29 N. Y., 358, it is said: "In cases of executory contracts for the sale and delivery of personal property the remedy of the vendee to recover damages on the ground that the article furnished does not correspond with the

contract, does not survive the acceptance of the property by the vendee, after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent on his part that the contract has been performed. . . . There is no intention that the defective article should be accepted, and that the vendee should rely upon the covenant for his indemnity. The latter is not bound to receive and pay for a thing that he has not agreed to purchase; but if the thing purchased is found on examination to be unsound or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back, and thereby rescind the contract, or he will be presumed to have acquiesced in its quality. He cannot accept the delivery of the property under the contract, retain it after an opportunity of ascertaining its quality and recover damages, if it be not of the quality or description called for by such contract." The same principle is strongly stated in *Jones v. McEwen,* 91 Ky. 374, in which *Bennett, J.,* says: "Where there is a contract to deliver goods or chattels of a particular description or quality at a future day and the vendor tenders goods not of the agreed description or quality in discharge of the contract and the vendee after inspecting them or having had a fair opportunity to do so, receives them in discharge of the contract, he cannot thereafter maintain an action against the vendor to recover damages for the defects in the description or quality." The learned Judge states the proposition in another form. "If the vendee after having inspected them, or after having had a fair opportunity to do so, receives them in discharge of the contract, although they do not, as to description or quality, comply with its terms he thereby waives every defect and he cannot recover damages on account of them." This court in *Manufacturing Co. v. Gray,* 111 N .C., 87, by *Clark, J.,* says: "The purchaser of the machinery, by the terms of the contract, had a reas-

PARKER *v.* FENWICK.

onable time after he received it to make known its defects.
But he seems to have kept and used the machinery without
complaint for some length of time, indeed until the plaintiff
sought to recover under the contract because of failure to pay
for it. If the objection was not made known within reason-
able time, and the purchaser continued to use the machinery
without objection, this was a ratification." The authorities
may be found in the note to Benjamin on Sales, 7th Edition,
736-7. "When there has been an acceptance by the purchaser
of the property it is, as a general rule, absolutely binding
and conclusive upon him, and precludes him from alleging
that the property is not of the character or quality called for
by the contract, and he therefore as a general rule, has no
remedy when the property is not of the character or quality
required by the contract of sale." 24 Am. & Eng. Enc.
(2nd Ed.) 1157. Of course if there is controversy as to the
unqualified acceptance, the fact should be submitted to the
jury. The defendant relies upon the case of *Cox v. Long,*
69 N. C., 7, to sustain his right to sue for, or, as in this
case, set up his counter claim, notwithstanding the accep-
tance of the machinery. We have no disposition to bring
that decision into question. It will be noted however that
the decision rests upon the exceptional facts in that case.
The shingles were paid for before delivery, or at least before
the plaintiff discovered that they were not of the width and
length contracted for. This was too late to enable the plain-
tiff to secure other shingles without immense damage to a
new building then being erected. They could not be returned
without loss to the plaintiff both in respect to the price paid
and the danger to the building. It will be further noted that
the court treat the contract as an express warranty. The case
may be said to be an exception to the general rule. It is cited
in *Austin v. Miller,* 74 N. C., 274., in which *Reade, J.* refer-
ring to the general rule, says: "But if B has paid for the ar-
ticle and by rejecting it he may lose the money and the article

both, then the better way is for him to receive the article and to make the most of it and to sue A for the breach of the contract." This case can hardly be considered as settling any thing more than the law upon the peculiar facts stated. It is again cited in *Lewis v. Rountree,* 78 N. C., 327. In that case there was an express warranty that the defendant should deliver "strained rosin." There can be no question about the right to sue upon an express warranty. The defendants did not deliver the thing contracted for. The rosin was paid for before it was discovered that it was not strained rosin. The real question in this case was whether the selection by the plaintiff of the barrels of rosin out of a larger number of barrels containing more rosin of the description called for prevented a recovery upon the warranty. In *Kester v. Miller,* 119 N. C., 475, there was an express warranty as to quality and finish of the engine; it appearing that there was a breach of the warranty the defendants retained possession and used the engine at the request of the plaintiff. There were no such facts in this case. There are a class of cases in which the vendee has been permitted to recover because of fraud or of latent defects or because the fact that the article sold did not correspond with the contract could only be ascertained by use, such as in cases of seeds sold for planting, guano sold for fertilizing. Without undertaking to discuss or distinguish the large number of cases cited in the text books, we are of opinion that upon the facts in this case, the defendant having in a most unequivocal manner and after inspection and discovery of such defects as are now complained of, accepted the machinery and used it for his own purposes for two years without any suggestion of a defect other than that discovered upon its receipt, he is deemed to have waived any claim for damages by reason of such defects. Any other rule than that which we find to be adopted by the courts would render all business transactions involving sales of personal property, unsafe and subject vendors to most

PARKER *v.* FENWICK.

grievous burdens. If a vendee wishes to be relieved of the duty of inspection and protected against all defects, he should demand a warranty of soundness. He may sue upon this as collateral to the contract of purchase. In such action either instituted by himself as plaintiff for breach or set up by way of cross action or counter-claim under The Code system, he is required to prove nothing but the contract of warranty, breach thereof and his damages. Benjamin on Sales, Sec. 610. We do not understand that the defendant claims that there was any express warranty collateral to the contract of purchase. We note that the form of the second issue does not very clearly present to the jury the question of fact to be decided. It assumes the very matter in controversy—whether the defendant had established any counter-claim. The jury were left to infer that the only question for determination was the damage. There was however no exception to the issue. The defendant was entitled to the instruction asked. We are further of opinion that there was error in the measure of damage laid down by the court. The true measure of damage is "the difference between the value of the property received and what it would have cost the defendant to purchase such machinery as that described in the contract and warranty." *M'f'g. Co. v. Gray,* 126 N. C., 108. We see no evidence of any fraud in this case. For the errors pointed out there must be a

New Trial.