ROY GARNER v. CLEGG KEARNS.

(Filed 9 May 1962.)

**1. Sales § 5—**

In order for the seller's representations to constitute a warranty, the purchaser must have relied upon them, and where the purchaser testifies that he examined the parts and equipment purchased before he bought them, he may not rely upon the seller's representations as to value as constituting a warranty.

**2. Sales § 13—**

> The buyer may not assert his right to recover for shortage of parts and equipment purchased when he uses some of the parts and equipment for almost a year before making inventory, and waits for almost two years after the purchase before complaining of any shortage.

APPEAL by defendant from *Gambill, J.,* at September 1961 Term of MONTGOMERY.

This is a civil action for the recovery of the balance alleged to be due on an executed contract for the sale of an automobile agency.

Plaintiff's evidence tended to show that after several months of negotiations, and after defendant had inspected the property involved, on 15 March 1957, he sold to defendant his Pontiac agency in the town of Biscoe "as a going business, lock, stock and barrel" for $20,000, $10,000 down and the balance within two years with interest at five per cent; that contemporaneously therewith General Motors transferred to defendant the Pontiac franchise, an "exclusive agency for all Montgomery County, the biggest portion of Moore, and the vicinity of Seagrove," which had been plaintiff's; that plaintiff delivered to the defendant the key to the premises which defendant thereafter occupied without rent until he moved the parts to his place of business in Star in the Fall; that although defendant was requested to move the equipment from plaintiff's building, he left it there after plaintiff rented it and expressly authorized the tenant to use it; that when it was due, defendant paid plaintiff the first year's interest of $500, and six months later he allowed plaintiff to credit him with $500 in an automobile trade; that it was not until about two years after the sale that defendant first complained of any shortage in the parts or equipment and refused to pay the balance due. Plaintiff instituted this action to recover $9,500 with interest from 15 March 1958.

In his answer to the complaint the defendant admitted that he took over the plaintiff's Pontiac agency and that he had paid him $11,000. He denied that a complete agreement had been reached as to the balance of the purchase price and alleged that it was to be determined upon an inventory. He further alleged that plaintiff had told him that in the property to be purchased for $20,000 were parts worth between $6,000 and $7,000 and equipment and fixtures worth $12,000; that the tangible property he received was worth only $2,700, and that he was entitled to recover the difference between $2,700 and the $11,000 paid plaintiff, or $8,300.

On the trial the defendant testified that he had bought the agency for $20,000. He said "That was the price; I'm not denying it." He further testified that he had been in the automobile business for about 30 years; that before he bought the business he had looked at the

articles in question and would say they had a value of $4,000 but, he said, "No inventory was made and I did not check closely enough." His evidence was that he made the first inventory some time about the first of 1958, almost a year after he bought the business; that although he found out that the parts were short, he did not go to plaintiff about the matter then. He testified: "Actually there was not as much there as I thought there was, to tell the truth." His parts man from time to time used some of the parts which defendant had purchased from the plaintiff, and in August 1957 moved them from Biscoe to Star but they were not then inventoried.

At the close of defendant's evidence plaintiff's motion for judgment of nonsuit as to the defendant's counterclaim was allowed. The defendant excepted. Issues were submitted to the jury and answered as follows:

1. Did the plaintiff and the defendant on the 15th day of March, 1957, enter into a verbal contract for the purchase and sale of the Pontiac Automobile Agency, as alleged in the complaint? Answer: Yes.

2. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $8,500, less interest.

From judgment on the verdict defendant appealed, assigning as error the nonsuit of his counterclaim.

*David H. Armstrong for plaintiff appellee.*
*Garland S. Garris for defendant appellant.*

PER CURIAM.   In his answer the defendant denied that he agreed to pay plaintiff $20,000 for his Pontiac agency; in his evidence he admitted it. In his pleadings the theory of defendant's counterclaim appeared to be a partial failure of consideration; on the trial his theory apparently changed to the breach of an express warranty of value. He can sustain the counterclaim on neither theory.

"Breach of warranty in a sales contract is an affirmative plea, whether as a defense or grounds for the recovery of damages, and the burden is on one who asserts it to establish it by the greater weight of the evidence." *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592. For the plaintiff's statements to have constituted a warranty the defendant must have relied upon them. *Smith v. Alphin,* 150 N.C. 425, 64 S.E. 210. His evidence shows that he did not.

Defendant testified that he had examined the parts and equipment in question before he bought the agency and that his opinion as to their value was infinitely lower than the one he said plaintiff had expressed.

After taking over the plaintiff's business as a going concern, the

defendant used at least some of the parts and equipment which came with it for almost a year before he made an inventory and for almost two years before he complained of any shortage. Upon this evidence he may not now assert a counterclaim for a shortage against the plaintiff who is seeking to recover the purchase price. *Parker v. Fenwick,* 138 N.C. 209, 50 S.E. 627.

The judgment of the court below is
Affirmed.