J. R. LANE v. JESSE RICHARDSON et al.

*Homestead—Personal Property Exemptions—Assignment—Covenant—Damages.*

1. As far as personal property is concerned, the right of exemption is personal to the debtor, and it loses its quality of exemption as soon as it is transferred.

2. A note held as part of the personal property exemption of a judgment debtor loses its quality of exemption when assigned, and the assignee holds it subject to the counter-claim of judgments against the assignor owned by the maker of the note.

3. When the homestead is sold, the proceeds lose the quality of homestead exemption and become subject to the personal property exemption.

4. On the breach of the covenant against encumbrances, the covenantee is only entitled to nominal damages, unless it appears that he has extinguished the encumbrance.

This was a CIVIL ACTION, tried before *Bynum, J.,* at February Term, 1889, of CHATHAM Superior Court.

The plaintiff declared on a note, under seal, executed to J. B. Harris by defendant Richardson on the 31st of March, 1887, for the sum of $500, with interest, at eight per cent., from date, payable one day after date. This note was the balance due on the purchase money of a tract of land which had been assigned to Harris as a homestead, and which he had sold with covenants against incumbrances, &c., to Lane. On this note there was a credit of $140, paid October 8th, 1887. The note was assigned to the plaintiff after maturity.

Before the sale of the land, several judgments had been docketed against Harris—one of Sikel, Hellen & Co., aggregating the sum of $283.91, and one in favor of Pope & Co. for $304.30.

The defendant Lane pleaded the two first judgments as a counter-claim, and the jury found that he was the owner of the same at the date of the assignment of the note. It was admitted that the defendants had never purchased or paid anything on the Pope judgment, but this, with the Sikel-Hellen judgments, were pleaded as a second defence, which was founded upon the breach of the warranty against incumbrances.

It was in evidence that, at the date of the assignment of the note sued upon, the assignor (Harris) did not then, at the beginning of the action, or at the time of the trial, possess more than $150 of personal property. It was also in evidence that, when the homestead and personal property exemptions of said Harris were assigned and set apart, the note sued upon was not included therein.

Harris was made a party defendant to this action, and stated in his answer that he claimed the note as his personal property exemption in favor of his assignee, the plaintiff.

The plaintiff alleged in his replication that the sale of the land was made subject to the judgments, and that, therefore,

there could be no breach of the warranty. In support of this contention, he introduced as a witness J. B. Harris, who testified as follows: "Some time in March, 1887, defendant wanted to buy my homestead; said he heard I wanted to sell, and wanted the refusal. He came repeatedly. I agreed to sell about the last of March. Said he would arrange to pay me if I would take part of the pay in two notes of $500 each; said that, on three days' notice, he would pay them, and we made the trade. I told the defendant there were judgments against the land. He said, 'If so, judgments were not a lien on the land,' and he would buy; said this after he had consulted his lawyer and he advised him he could buy. I sold to him and executed the deed. As to the Pope judgment, Pope sued Richardson and myself, and Richardson defended the suit; paid fifty dollars, and made me pay him sixty dollars for it. This was after I made the mortgage and before the deed was made."

Question: What, if anything, did the defendant Richardson say about payment of the note at the time of its execution, should the judgment creditors attempt to trouble you? Objected to by defendant Richardson. Objection overruled. Exception.

Answer: "Mr. Richardson said, 'Make it a due note, and I will pay it on a notice of three days.'"

Plaintiff then introduced Mrs. J. B. Harris, who testified as follows: "I was present when the note was executed by my husband. When the defendant gave the notes, he said to me, 'Don't let Mr. Harris take the notes and trade them off. When you want money, let me know, and I will pay them in three days.' He said if they found out we had the notes and came upon us for them, to let him know; that he would pay it without further trouble. About five weeks after the notes were given, I went to the defendant for money. He seemed confused; said he did not have any money. I asked him if he was afraid to pay it. He said Mr. Womack

told him the judgments would come against the note, but would see what he could do for me when his son-in-law came from Atlanta. He did not mention any assignment. I think $140 would cover the personal property of Harris at the time of the sale of the note to Lane. He owns about the same now, except a few hogs."

The Court submitted the following issues to the jury, to-wit:

"1. Was the defendant Richardson the owner of the Sikel, Hellen & Co. judgments against the defendant John B. Harris at the time of the assignment of the bond sued on to the plaintiff?

"2. Did Richardson contract with Harris, before the execution of the deed, to take the land with the incumbrances of the judgments, and was the deed executed under this contract?

"3. To what sum is the defendant Richardson entitled by reason of the incumbrance in the title conveyed by the deed of March 31st, 1887, from Harris to him?

"4. Is the plaintiff entitled to recover any part of the note sued upon, and if so, what part?"

The plaintiff asked the Court to charge the jury as follows:

"1. That the Constitution vests the homestead right in the resident owner of the land, and authorizes him to convey it. The vendee must take it with the same quality annexed that had attached to it in the possession of the vendor—that is, to be exempt from executions for the debts of the vendor, at least during his life, for the homestead is a right annexed to land, and follows it, like a condition, into whosesoever hands it goes, without regard to notice.

"2. That if the jury shall find that, at the date of the assignment of the note by Harris to Lane, said Harris only owned and possessed $140 worth of personal property, the plaintiff, being relegated to Harris' rights, is entitled to recover the amount demanded in the complaint, or so much

thereof as, with the $140, will make $500, because said Harris was entitled to the same as his personal property exemption.

" 3. That he is also entitled to recover, if the jury find that said Harris owned, at the time of the institution of this suit, and at the time of the trial, not more than $150 worth of personal property."

Which instructions were refused.

The defendant Richardson asked the Court to charge the jury as follows:

" 1. That the judgments given in evidence are valid subsisting liens against the reversionary interests of J. B. Harris in the land purchased by Richardson from Harris, and for the purchase of which the bond sued on was given.

" 2. That the mere knowledge of incumbrances by Richardson at the time he took the deed of March 31st, 1887, and gave his bond, does not affect his· right to recover on the covenants in said deed against incumbrances.

" 3. That the defendant Richardson is entitled to whatever sum would be a reasonable and fair one to extinguish the incumbrance of the judgment liens.

" 4. That there is no evidence that Richardson agreed to take the land with the incumbrances, nor that the deed was executed under this contract.

" 5. That if the jury find that the defendant Richardson was the owner of the Sikel, Hellen & Co. judgments at the time of the assignment of the bond in suit to plaintiff, defendant is entitled for the full amount of the judgments as a counter-claim.

" 6. That the deed of March 31st, 1887, conveys a fee-simple estate in the land, and not a homestead interest."

The Court gave the 1st, 2d, 4th and 6th instructions, as asked by the defendant Richardson; refused the 3d and 5th, and instructed the jury as follows:

" You answer the first issue Yes, or No, as you may find the facts to be. As to the third issue, if you find the first issue Yes, then defendant Richardson is not entitled to the full amount of the Sikel, Hellen & Co. judgments, but such sum as you may find he paid for them, provided that sum is less than the whole amount of the judgment, and the evidence is that it was less, that is, $175. And, in addition to this sum, you may consider the Pope judgment, and say what, in your opinion, from the evidence, defendant is entitled to on account of that judgment, which, the Court instructs you, is an incumbrance on the land."

The plaintiff excepted to the charge of the Court—

1. Because it charged that there was no evidence, as to a contract between Harris and Richardson, that Richardson should take under the deed the estate of Harris simply with the incumbrances upon it.

2. Because the Court failed to give special instruction requested by plaintiff.

The defendant Richardson excepted to so much of the charge of his Honor as failed to present the view of the defendant as to the counter-claim of the judgment of Sikel, Hellen & Co. in any respect.

The jury, in response to the first issue, replied Yes; to the second issue, No; to the third issue, $479.30; to the fourth issue, No.

The defendant Richardson thereupon tendered to the plaintiff judgment for $48.52, with interest from October 8th, 1887, and all costs which had accrued prior to the answer.

Plaintiff moved for a new trial. Motion overruled.

Judgment was signed by the Court as tendered by the defendant Richardson, from which plaintiff appealed.

*Mr. C. M. Busbee*, for the plaintiff.
*Mr. T. B. Womack*, for the defendants.

SHEPHERD, J —after stating the case: When the payee Harris endorsed the note sued upon to the plaintiff, it was past maturity, and the plaintiff took it "without prejudice to any set-off, or other defence, existing at the time of the assignment." *The Code,* § 177.

At the time of the assignment, the defendant Richardson had become the owner of the Sikel & Hellen judgments against Harris, and these constitute a valid counter-claim against the plaintiff, unless he can show such circumstances as will except him from the general principles applicable to such a defence. *McClenahan* v. *Cotten,* 83 N. C., 332; *Riddick* v. *Moore,* 65 N. C., 386.

This, he contends, he has done by showing that, at the time of the assignment of the note, and up to the trial, his assignor, Harris, did not possess over one hundred and fifty dollars worth of personal property, and that he, the plaintiff assignee, has a right, with the consent of Harris, to have the quality of the personal property exemption now impressed upon the note, and thus defeat the counter-claim of the said defendant.

The note had never been included in any assignment of exemption to said Harris; but even if it had been so included, we are clearly of the opinion that it would have lost its quality of exemption as soon as it was transferred. In other words, that so far as personal property is concerned, the right of exemption is personal to the judgment debtor. This view is sustained by the case of *Johnson* v. *Cross,* 66 N. C., 171, where it is held that, upon the death of the debtor, the exempted property passes to his executor or his administrator, to be administered in the same manner as other assets. To hold otherwise would present the anomaly of a judgment debtor having $500 worth of property set apart to him at the time of the levy or sale, and the quality of exemption concurrently adhering to perhaps thousands of dollars' worth of *choses in action* which had been included in various pre-

vious assignments of his exemption, and which had been transferred by him. On the other hand, if the transferred *choses in action* are to be deducted in every assignment of the exemption, the appraisers would be involved in the inextricable difficulty of ascertaining how many were outstanding, how much is due upon them, whether they are solvent, &c. Such absurdities were never contemplated by the law-makers, and we cannot adopt a principle which would lead to such a conclusion.

Another contention of the plaintiff is, that, as the judgments could not have been enforced against the homestead, they ought not to be enforced against the purchase money due upon a sale of the same. The answer is, that when Harris sold his homestead, he converted it into personal property, which became the subject of the personal property exemption, while the land retained the quality of the homestead exemption in the hands of the purchaser.

It follows from what we have said, that the Sikel & Hellen judgments were properly held to be a defence. They seem to have been submitted to the jury with the Pape & Co. judgment upon the counter-claim for a breach of the warranty against incumbrances. We suppose that it was in this aspect of the case that his Honor charged the jury that Richardson was entitled to only $175, the amount he paid for them. If there be any error in restricting them to this second defence and applying the rule of damages applicable thereto, it cannot be corrected here, as the defendant has not appealed. He is, therefore, entitled, on the Sikel & Hellen judgments, to only $175 and eight per cent. interest thereon from the first of April, 1887.

We think that his Honor erred in permitting the jury to consider the Pape & Co. judgment in estimating the damages for the breach of warranty. It is admitted that it has never been extinguished by the defendant Richardson, and that he has never paid anything on it.

" The rule as to the measure of damages for breach of the covenant against an incumbrance is, that the covenantee is entitled to recover the amount necessary to extinguish it; but, if he has not extinguished it, and it is still outstanding, his damages are but nominal." *Delansyne* v. *Norris,* 7 Johns, 358; *Richard* v. *Bent,* 59 Ill., 38; S. C., 14 Am. Rep., 1; *Johnson* v. *Collins,* 116 Mass., 392; *Read* v. *Pearce,* 36 Maine, 445; *Eaton* v. *Lyman,* 30 Wis., 41; *Foote* v. *Burnett,* 10 Ohio, 317; 2 Greenleaf Ev., 242.

We agree with his Honor that the mere knowledge of he existence of the judgments at the time of the sale would not defeat the right of the defendant to recover on the warranty. We concur also in his ruling that there was no reasonably sufficient testimony to show that the sale was made subject to the said judgments.

As the jury found that the defendant was the owner of the Sikel & Hellen judgments at the date of the assignment of the note, and as the amount paid for the same is not disputed, the errors committed may be corrected by a modification of the judgment in conformity to the principles declared in this opinion.

Modified and affirmed.