ISAIAH M. PIERCE, Assignee,

*vs.*

HERBERT J. BANTON AND ADA M. FISKE, Admx.

Penobscot.    Opinion April 11, 1904.

*Sales.   Warranty.   License,* to cut logs.   *Lumber Permit.   Damages,*
when title of licensor fails.

The written agreements commonly used in this State between a licensor and
licensee, called permits, whereby the licensee is authorized to enter on
land and cut and remove logs and timber paying stumpage therefor, are
executory contracts for the sale of the logs and timber after the cutting,
as personal property, coupled with a license to enter and cut.

When it is provided in such written license or permit that "said grantee
(licensee) agrees that the said grantor (licensor) shall reserve and retain
full and complete ownership and control of all lumber which shall be cut
and removed . . ." until all matters shall be settled and the agreed
stumpage paid, *held;* that this provision amounts to an assertion of title
by the licensor to the timber and logs on the permitted lands; that such
an assertion of title is a warranty of title; and is as effectual to create a
warranty as actual possession of the thing sold.

When such logs or timber are replevied from the licensee by the true owner
of the land, the rule of damages is the value of the logs at the time when,
and the place where, they were replevied from him, and all costs, if any,
to which he may be subjected by the replevin suit, less the stumpage price
he was to pay under the terms of his permit, to which balance interest
should be paid from the date of the taking on the replevin writ.

On report.    Judgment for plaintiff.

This was an action of assumpsit in which there were four counts,
two to recover damages for an alleged breach of a written contract,
the third on an implied warranty of title, and the fourth for money
had and received.    They were all founded on a written permit to
cut timber on lot 22 in the town of Medford, Penobscot County,
given by the defendant Herbert J. Banton and the defendant Ada M.
Fiske's intestate, Fred J. Fiske, to Harry J. Bailey, the plaintiff's
assignor.

The second count, treated by counsel as a count for breach of an implied warranty of title, is as follows:

"Also, for that whereas heretofore, to wit; on the 9th day of December, A. D. 1899, at Bangor aforesaid, by a certain agreement then and there made by and between the said Herbert J. Banton and Fred J. Fiske, in his lifetime, and Harry J. Bailey, it was agreed that the said Herbert J. Banton and Fred J. Fiske should deliver during the season then next following to the said Harry J. Bailey, certain large quantities of pine, spruce and fir lumber to be cut from lands described in said agreement by the said Harry J. Bailey under a license given to him, the said Harry J. Bailey, by the said Herbert J. Banton and Fred J. Fiske, said lumber to be cut and removed upon certain conditions and restrictions fully set forth in said agreement at a price per thousand feet for stumpage which was stipulated and agreed upon in said agreement, to wit: for spruce $2.25 per M. for pine $4.50 per M and for fir $2.25 per M, and the said agreement being so made as aforesaid, afterwards, to wit, on the first day of June, 1900 at Old Town in said County of Penobscot, in consideration thereof that the said Harry J. Bailey at the special request of the said Herbert J. Banton and said Fred J. Fiske had then and there undertaken and faithfully promised the said Herbert J. Banton and Fred J. Fiske to perform and fulfill the said agreement in all things on his part and behalf to be performed and fulfilled, they, the said Herbert J. Banton and Fred J. Fiske, undertook and then and there faithfully promised the said Harry J. Bailey to perform and fulfill the said agreement in all things on their part and behalf to be performed and fulfilled; and the plaintiff saith that the said logging season of 1900 hath long since passed and although the said Harry J. Bailey was always ready and has offered between the 6th day of December, 1899 aforesaid and the day of the purchase of this writ to accept and take all of the lumber that he cut under said license and agreement during the logging season of 1899 and 1900 aforesaid and to pay the said stumpage of $2.25 per M for spruce and fir and $4.50 per M for pine, yet the said Herbert J. Banton and Fred J, Fiske in his lifetime nor the said Ada M. Fiske since his decease, not regarding their said agreement nor their said promise and undertaking

so by them made as aforesaid, but contriving and fraudulently intending to deceive the said Harry J. Bailey in this behalf, did not deliver to the said Harry J. Bailey 884 pine logs and 906 spruce and fir logs making in all 1790 logs of the lumber so cut by the said Harry J. Bailey under said license and agreement, but wholly neglected and refused so to do.

"And the plaintiff avers that the said Harry J. Bailey hath been put to great expense of time, money and labor in cutting said lumber and hauling the same and driving the same to market, to wit; at Stillwater in the Penobscot river, and that by reason of the neglect and refusal of the said Herbert J. Banton and Fred J. Fiske in his lifetime or the said Ada M. Fiske since his decease, to deliver said lumber as aforesaid, the said Harry J. Bailey hath wholly lost the time, money and labor expended in cutting and hauling and driving said logs and hath lost the opportunity to sell said logs at an advanced market price, to wit, fifteen hundred dollars ($1500) for said logs and lumber.

"And the plaintiff further avers that on the 12th day of June, A. D. 1901, all of the right, title and interest in and to said logs and lumber and right to maintain an action for a breach of said contract was transferred and assigned to him, the said Isaiah M. Pierce by the said Harry J. Bailey, as will appear by the assignment to be filed in court with this writ, wherefore and by force of the statute in such case made and provided the defendants became liable and promised the plaintiff to pay him the sum of fifteen hundred dollars ($1500) on demand."

It appears from the reported testimony in the case that on the 9th day of December, 1899, Herbert J. Banton of Lagrange and Fred J. Fiske of Bangor gave to Harry J. Bailey of Howland a permit, called an agreement and conditional license to cut and remove spruce, fir and pine timber from lot 22 in the town of Medford. Under said license Harry J. Bailey entered upon the lot during the winter of 1899 and 1900 and cut and removed the logs which form the subject of controversy in this suit. The title to lot 22 was claimed by William M. Eldridge of Dexter and, during the winter of 1899 and 1900, he asserted his title to the premises in various ways, by

forbidding the cutting of the logs on the part of Bailey and finally by going on to the logs in the spring, marking them over, rolling them into the river and driving them. By the terms of the permit Harry J. Bailey was to pay stumpage for spruce and fir $2.25 per thousand, and for pine $4.50 per thousand, the stumpage to be paid on the 1st day of June, 1900. Prior to that day said Harry J. Bailey, having lost possession of said logs by the assertion of a superior title on the part of William M. Eldridge, did not pay or tender to the said Banton or Fiske the stumpage due on said logs, but claimed that he has ever held himself in readiness to do so.

On the 24th day of August, 1900, the said William M. Eldridge caused to be replevied the logs which were cut from lot 22 on a replevin writ dated June 21, 1900; said action was entered at the October term, 1900, the action being tried at the April term, 1901. A verdict was rendered for the plaintiff, William M. Eldridge, and the jury made a finding that the property described was the property of Eldridge, and not of the defendant. That replevin suit against Harry J. Bailey was defended by Banton and Fiske, the defendants in this action. A motion for a new trial was submitted to the full court and judgment was rendered on the verdict. Judgment rendered March 8, 1902.

On the 11th day of December, 1899, Harry J. Bailey assigned the permit mentioned in this case to I. M. Pierce, of Montague, as security for supplies and money advanced to carry on the lumbering operation, and by an assignment dated June 12, 1901, said Harry J. Bailey made absolute the conditional assignment.

On the 27th day of June, 1901, Isaiah M. Pierce, the assignee, brought this action against the defendant, Herbert J. Banton and Ada M. Fiske, administratrix of the estate of Fred J. Fiske, for breach of contract in the non-delivery of the logs.

*W. H. Powell,* for plaintiff.

The plaintiff was excused from making a tender or payment, and it is sufficient that he has always been ready to pay the agreed price of stumpage upon delivery of the logs. Law never requires useless formalities. *Ward* v. *Fuller,* 15 Pick. 190; *Southworth* v. *Smith,* 7 Cush. 393; and *Mowry's case,* 112 Mass. 400.

Payment of the purchase price, or the stumpage, and the delivery of the logs and the title to the same were to be simultaneous, and on June first the defendants could not have delivered the logs because they were in the possession of Eldridge; they could not have given title to them because they did not have title themselves, but it was in Eldridge as has been shown by the result of the case in court. It would be unreasonable to expect the plaintiff to make a tender of the stumpage. If tendered, it would have been accepted by the defendants, and if they were irresponsible then the plaintiff's loss would be just so much the greater. 2 Pars. Cont. 7th ed. p. 811.

Counsel also cited: *Lake Shore & M. S. R. Co.* v. *Richards*, 152 Ill. 59, 30 L. R. A. p. 45, and notes; *Skinner* v. *Tinker*, 34 Barb. 333; *Bond* v. *Carpenter*, 15 R. I. 400; *Salvo* v. *Duncan*, 49 Wisc. 215; *Corbett* v. *Anderson*, 85 Wisc. 218; *Grandy* v. *Small*, 5 Jones L. 51; *Shaw* v. *Grandy*, 5 Jones L. 57; *Abrams* v. *Suttles*, Busbee, L. 90; *Woods* v. *Cooke*, 61 Maine, 215; *Duffy* v. *Patten*, 74 Maine, 396; *Richards* v. *Allen*, 17 Maine, 296; *Bassett* v. *Bassett*, 55 Maine, 127; *McCarthy* v. *Mansfield*, 56 Maine, 538.

Banton and Fiske, were in actual possession of lot 22; they had all the possession that the nature of the property permits; and that is all that the law requires. The property was wild land; no one ever stays upon wild land except for temporary purposes.

The possession of Bailey was the possession of Banton and Fiske, and but for the permit the sale would have been completed when the logs were severed from the soil. The licensee of Banton and Fiske was in possession of the land at the time that the sale was made. In *Shattuck* v. *Green*, 104 Mass. on page 42, the court holds "If a tenant in common of personal property, which is in the possession of a third person as bailee of all the owners, sells his individual share, the possession of the bailee is his constructive possession so as to attach to the sale an implied warranty of title," and in *Grose* v. *Hennessey* 13 Allen, p. 389, the court holds, "If a chattel is sold to which the vendor had no title, the purchaser may maintain an action against him to recover damages therefor; and it is immaterial that the purchaser has not been deprived of possession of the chattel." The defendant, Hennessey, was in possession of real estate under a lease. He sold to

the plaintiff, Grose, a building located on the land as personal property. At the same time he transferred to Grose the lease of the land. He had no title to the building as personal property because it was a part of the realty, and the title to the realty was in another.

On page 390 in the opinion by Hoar, J., in the above case is the following: "By the sale of it as a chattel no title passed. In every sale of personal property there is an implied warranty of title; here there was no expressed warranty." So far as the case discloses it is exactly similar to the case at bar. The case does not disclose whether the defendant, Hennessey, held the land under a lease from the true owner or not; if he did not, the two cases are exactly parallel.

A sale of personal chattels implies affirmation by the vendor that the chattel is his and, therefore, he warrants the title unless it is shown by the facts and circumstances that the vendor did not intend to assert ownership but only to transfer such interest as he might have in the chattel sold. Benj. Sales, § 639.

If there was an assertion of ownership by the vendor in the property sold, then there would arise a warranty title even though he were not in possession. *Huntingdon* v. *Hall*, 36 Maine, 501.

Damages: *Bush* v. *Holmes*, 53 Maine, 417, and 5 Am. & Eng. Ency. of Law, p. 30, and notes.

*Taber D. Bailey*, for defendants.

First: The permit in this case is simply an executory contract for conditional sale of standing timber coupled with a license to go upon the land and remove the logs.

Second: After the trees were cut and removed from the land the license was executed, but the contract of conditional sale was not executed, because the stumpage never was paid and the title to the personal property did not pass until the payment of the stumpage money, and the performance of the other conditions precedent.

Third: There is no implied warranty of title, because a warranty is an incident of completed sales only, and second because the vendors were not in possession of the property sold.

Counsel cited: *Banton* v. *Shorey*, 77 Maine, 48; *Comstock* v. *Smith*, 23 Maine, 202; *Putnam* v. *White*, 76 Maine, 551; *Brown* v.

*Haynes,* 52 Maine, 578; *Crosby* v. *Redman,* 70 Maine, 56; *Osbourne*
v. *Gantz,* 60 N. Y. 540; *Huntingdon* v. *Hall,* 36 Maine, 501; *Pratt*
v. *Philbrook,* 33 Maine, 17. Damages: *Ripley* v. *Mosely,* 57
Maine, 76; *Washington Ice Co.* v. *Webster,* 62 Maine, 341; *Winslow*
v. *Lane,* 63 Maine, 161.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE,
    POWERS, PEABODY, JJ.

STROUT, J.   Defendant Banton and Fred J. Fiske, now deceased,
made a written agreement with Harry J. Bailey, by which Banton
and Fiske authorized Bailey to enter upon certain lots of land, among
them lot 22 south of and adjoining the Piscataquis river, in Medford,
and cut and remove spruce, fir and pine timber, and pay therefor the
stumpage mentioned in the agreement.   The settled construction of
contracts of this character is, that they are executory contracts to sell
the timber after cutting, as personal property, coupled with a license
to enter and cut.   *Emerson* v. *Shores,* 95 Maine, 237.

Under this contract Bailey cut a quantity of timber from "the
lower half of lot No. 22."   From this 1180 pine logs, 341 fir logs
and 98 spruce logs were taken from Bailey on a replevin writ against
him, in favor of William M. Eldridge et al.   That suit was tried at
the January term of this court for Penobscot County, 1902, and
defended by the defendants in this case.   The issue in that case was
one of title to the logs, based upon the title to the lower half of lot
No. 22.   The verdict was that the logs were the property of the
plaintiff in that action, and not the property of Bailey.   There was
also a special finding that the plaintiffs and their grantors had for
twenty consecutive years occupied lot 22 "actually, openly, notori-
ously and continuously" before the cutting of the logs replevied.
Judgment was finally entered upon the verdict.   This judgment con-
clusively determined, as between these parties, that the land where
the replevied logs were cut was the property of the plaintiffs in the
replevin suit, and that the defendants in this suit had no title thereto,
nor to the logs cut thereon.

The plaintiff is the assignee of Bailey of all his rights under his contract with the defendants, and all rights of action which Bailey had growing out of his operation under the agreement.

The plaintiff claims that the defendants impliedly warranted to Bailey their title to the logs. It is held in this State that no warranty of title is implied in a sale of personal property, where the seller is not in possession of the property, and makes no delivery of it, nor any representation as to the title. In such cases the rule caveat emptor applies. *Huntingdon* v. *Hall,* 36 Maine, 503.

But the facts in this case differ from that. Here, in the written license to Bailey it is provided that "said grantee hereby agrees that the said grantor shall reserve and retain full and complete ownership and control of all lumber which shall be cut and removed from the aforementioned premises," until all matters shall be settled, and the agreed stumpage paid. This language fairly amounts to an assertion of title by the licensors to the timber on the permitted lands. They could not "reserve and retain complete ownership" of that to which they had no title. The expression is equivalent to saying,— we now own this timber, and we retain such ownership till payment is made. Such assertion of the title is a warranty of title. This principle is distinctly recognized and affirmed in *Huntingdon* v. *Hall,* supra. Such assertion of title is as effectual to create a warranty as actual possession of the thing sold. It having been shown that Banton and Fiske had no title to the logs in controversy, which were cut by Bailey under their permit, there was a breach of their warranty, and for that breach they are liable to the plaintiff.

The rule of damages is the value of the logs at the time when and the place where they were replevied from Bailey, and all costs, if any, to which he was subjected by the replevin suit, less the stumpage price he was to pay under the terms of his permit, to which balance interest should be added from the date of the taking on the replevin writ.

*In accordance with the agreement of the parties, case remanded for assessment of damages.*