JOHN W. MARTIN, ADMINISTRATOR, v. C. C. McDONALD.

(Filed 17 February, 1915.)

**Vendor and Purchaser—Personal Property—Implied Warranty—Bank Stock —Assessment.**

One who offers personal property to another for sale impliedly warrants that there are no liens or encumbrances on the title which will affect its value; and the acceptance of an offer of sale of National bank stock cannot be enforced when the proposed purchaser was unaware at the time that the comptroller of the currency had ordered an assessment made upon the shares for the purpose of making up a deficiency in the capital stock of the bank.

APPEAL by defendant from *Carter, J.,* at November Term, 1914, of PASQUOTANK.

Civil action. There was a verdict and judgment for the defendant. The plaintiff appealed.

*Aydlett & Simpson for plaintiff.*
*Jones & Bailey, Ward & Thompson for defendant.*

BROWN, J. This action is brought to recover for a breach of contract in the sale and purchase of ten shares of stock of the American National Bank of Asheville. The contract is evidenced by two telegrams, as follows:

ELIZABETH CITY, N. C., April 26, 1912.

C. C. McDONALD,
    *Raleigh, N. C.*

Will you give sixty for Asheville stock?          (Signed)   KRAMER.

The defendant replied:

H. G. KRAMER,                    RALEIGH, N. C., April 26, 1912.
    *Elizabeth City, N. C.*

Yes; will give you sixty.          (Signed)   C. C. McDONALD.

The plaintiff on the same day assigned the stock and sent it with two drafts to the defendant at Raleigh. The defendant refused to pay the drafts and returned the stock. The plaintiff afterwards sold the stock for $200 and instituted this suit to recover the difference, towit, $400.

The undisputed fact is that at the time the defendant accepted the plaintiff's offer the stock had been assessed by the United States Government $40 per share, which fact was unknown to the defendant. This assessment was made by order of the comptroller on 18 April, 1912, for the purpose of making up a deficiency in the capital of the bank.

The defendant learned of this assessment after he had accepted the plaintiff's offer, but before receiving and paying for the stock. We are of opinion that his Honor was correct in holding upon the admitted evidence that the defendant was not compelled to take and pay for the stock.

It is elementary that in sales of personal property there is an implied warranty of a good title upon the part of the vendor, and this warranty extends to and protects against liens, charges, and encumbrances by which the title is rendered imperfect and the value depreciated thereby. 1 Parsons Contracts, 574; *Garrett v. Goodnow,* 32 L. R. A., 321; Benjamin on Sales (6 Ed.), by Bennett, 627 *et seq.,* and note 11, page 631; *Anders v. Lee,* 21 N. C., 318; *Sparks v. Messick,* 65 N. C., 442; *Hodge*

*In re* BATEMAN'S WILL.

*v. Wilkinson,* 111 N. C., 56; 2 Mechem Sales, sec. 1304; *Clevelenger v. Lewis,* 16 L. R. A. (N. C.), 410; *Peoples Bank v. Kentz,* 99 Pa., 344; 44 Am. Rep., 112; *Allen v. Pegram,* 16 Iowa, 163.

In *McClure v. Central Trust Co.,* 165 N. Y., 108, 53 L. R. A., 153, in speaking of the sale of corporate stock with defective title, the Court says: "We think it was a condition of the sale, whether called an 'implied warranty' or any other name, that the defendant was to deliver stock free from lien, for that alone would meet the description of the thing sold under the circumstances surrounding the parties when the sale was made. Shares of stock so covered with liens as to be of no value are not what the parties meant, for such shares would be worth no more than if the signatures to the certificates had been forged, although but for the liens the stock would have been worth the sum paid for it. *The substance of the thing sold was not stock of any particular market value, but unencumbered stock, of the same value as free shares, and such as persons of ordinary intelligence would understand was meant by the general description of stock. By a 'share of stock' the parties did not mean half a share or any fraction of a share representing an equity of redemption, but an entire share not cut down by a charge."*

It seems to be well settled that the existence of a valid lien upon the stock is such a defect in the title as will avoid the buyer's liability, and in an action for damages, brought by the seller, the buyer may avoid the contract by showing that there was a valid lien on the property. 35 Cyc., 160, 585, and 156.

No error.