### 13516

### SMITH v. RUSS MFG. CO.

(166 S. E., 607)

*Messrs. Townes & Wells,* for appellant,

*Messrs. Morgan & Cothran,* for respondent,

November 17, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, by Hugue G. Smith, as plaintiff, against the defendant, Russ Manufacturing Company, a nonresident corporation, was commenced in the County Court for Greenville County, this State, February 9, 1931. Jurisdiction was acquired by an attachment of a soda fountain described in the complaint. After the commencement of the action, the defendant gave bond in the manner provided by law and obtained possession of the property attached. The purpose of the suit was to obtain judgment against the defendant in the sum of $137.58, based upon the following alleged facts, omitting immaterial matters:

"1. That on or about the 14th day of October, 1930, the defendant entered into a contract with the plaintiff whereby the defendant sold to the plaintiff the following articles of personal property, to wit:

"1. Used F. 1008-29 Defiance Outfit with No. 2 Defiance Style Counter for Frigidaire. 1-No. 27 Spoon Vat in place of 1 Cr. Fruit Furnish No. 25 jars-No. 11 covers and ladles. Added to that was an insurance premium, a fire insurance policy having been issued for the term of two years and in confirmation and part performance of said contract, the plaintiff at said time paid to the defendant $68.23 and an insurance premium of $6.82 and at the same time executed to the defendant a note in the sum of $614.06, the balance of purchase money to be paid in twenty-four equal installments, except the first installment of November, 1930, which was to be $16.06. That plaintiff has paid to the defendant the cash payment above stated of $68.23, and $6.82 insurance premium, $20.47, $16.06 and $26.00.

"2. That the price agreed to be paid for said articles of personal property was a sound price and the defendant was to have absolute title to said property, free from encumbrance.

"3. However, since said contract the Delinquent Tax Collector for the County of Greenville, State of South Carolina, has presented a claim for State and county taxes against said property and is threatening to levy upon and seize and sell said property for the payment of said taxes; that said collector notified the defendant of the claim and imminent danger of the property being sold for taxes; that no attention or response was given to said notices; that this plaintiff repeatedly notified the defendant of the encumbrance and cloud upon his title but no relief was offered or has been given and finally on the —— day of—— this plaintiff elected to rescind said contract and notified the defendant of his action and that said articles of personal property were subject to the order of the defendant.

"4. Defendant has breached the implied warranty of good title to said property and this plaintiff has been damaged in a sum equal to the payments made thereon and is entitled to a return or reimbursement thereof.

"3. The defendant is a corporation under the laws of one of the states of the United States and has its principal place of business in Cleveland, Ohio, is a nonresident of this State and has the above described property in this State."

In its answer the defendant admitted the allegations contained in paragraph 1 of plaintiff's complaint, but denied all other allegations contained therein, and made, in its answer, the following allegations, as a defense to the suit: "The defendant admits upon information and belief that the delinquent tax collector for Greenville County, South Carolina, is making some claim for payment of an alleged property tax apparently due by a former owner of the business, now operated by the plaintiff, but the defendant denies that said alleged tax is a lien on the property described in the complaint, or that such property is subject to levy and sale on account of the said tax. Defendant when notified of the tax claim immediately attempted to secure proper adjustment of the tax, obtaining from the delinquent tax collector an agreement for an extension of time and notified the attorneys for the plaintiff sometime prior to the institution of this action that the tax would be paid by the defendant either in full or in part, as required by the tax authorities. Defendant alleges upon information and belief that the plaintiff desired to close his business voluntarily, and is now seeking to use the alleged tax claim as a pretext for rescinding the valid contract with the defendant and endeavored to secure for himself payments already made under the terms of the contract and avoid payment of the remaining installments. Defendant alleges that the plaintiff has had the use of the property described in the complaint since October 14, 1930, and that the reasonable rental of said property was in excess of the payments made under the terms of the contract."

Issues being joined, the case was tried in said Court, April 18, 1932, before Honorable Martin F. Ansel, without a jury. After taking the testimony offered in the cause, his Honor, Judge Ansel, issued the following order in the case:

"ORDER

"Sometime—October, 1930—the plaintiff purchased a used soda fountain outfit (described in the pleadings and testimony), made a cash payment on the purchase price and agreed to pay the remainder in monthly installments, and the parties entered into a conditional sales contract to that effect. Plaintiff had possession of the property and operating it. After some time had elapsed and plaintiff had made his monthly payments in accordance with the agreement, the delinquent tax collector appeared with a tax execution for the previous year and demanded payment, which plaintiff refused. Plaintiff at once by wire and by letter communicated these facts to the defendant as did the tax collector. To none of these did the defendant reply, but did through his counsel agree with the tax collector to take care of the taxes. Time went along and nothing being done, the collector again sought out the plaintiff and being refused payment announced he would sell the property.

"Plaintiff thereupon acquainted the defendant with the threatened action and upon its failure to act, plaintiff tendered back all the property and rescinded, on his part, the contract. Following this, he brought this action and attached the property as security for whatever judgment he might obtain, giving the usual bond in such cases.

"Sometime thereafter, the defendant having appeared and answered, itself gave bond and reclaimed the property, exercised ownership thereof and sold and disposed of same.

"The case was tried by me without a jury. A jury trial having been by all parties waived—and I find that the defendant joined in the breach or rescision of said contract, has retained all of the benefits growing out of said contract and its breach and has thereby damaged the plaintiff in the

sum of One Hundred Thirty-seven and 58/100 ($137.58) Dollars.

"Let the plaintiff have judgment against the defendant for the sum of One Hundred Thirty-seven and 58/100 Dollars and costs."

From this order and the judgment entered thereon, the defendant has appealed to this Court.

Appellant presents three exceptions, but in appellant's brief it is stated that "the only material issue for determination in this appeal is whether the express warranty contained in the written contract entered into by the plaintiff and the defendant excludes the implied warranty of title alleged to have been breached."

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, and, upon refusal of the trial Judge to grant this motion, appellant made a motion for direction of a verdict, offering no testimony except the introduction of the contract between the parties. After considering appellant's motion for direction of a verdict, his Honor refused to grant the same and issued the order above quoted. The contract above referred to is quite lengthy, but for the purpose of a clear understanding of the position of the parties we quote the same herewith, omitting the description of the property and certain other unimportant matters.

"The parties hereto do agree hereby each with the other as follows:

"1. Seller agrees to make or cause to be made, sell and deliver in accordance with the terms of this contract, and buyer agrees to purchase from seller in accordance with the terms thereof, certain apparatus and equipment to be made specially for buyer according to the following specifications:

"1. (Description of property omitted.)

"2. For which buyer agrees to pay Six Hundred Eighty-two and 29/100 Dollars, $682.29, f.o.b. Present location,

to be paid as follows: $68.23 upon signing of this agreement; $614.06 deferred balance; $682.29 total.

"Deferred balance payable in 24 equal monthly installments as evidenced by interest-bearing promissory note, or notes.

"$(3.41) insurance premium at rate of 50c per $100.00 per year, paid upon signing of this agreement.

"The first installment of balance to be paid by buyer is to become due thirty days from date of shipment, and remainder of balance on same date of each consecutive month thereafter, until full amount thereof shall have been paid. Each installment bears interest at rate of six per cent (6%) per annum to maturity from date of shipment.

"3. Buyer hereby appoints treasurer of seller, his (or its) agent for purpose of inserting in note or notes executed concurrently herewith, date of note or notes which shall be date of shipment to buyer, and dates and amounts of installments which shall date from day of shipment and be in equal or graduated amounts determined by percentage schedule contained herein. This authority is given as date of shipment is not now known and note or notes and installments are to bear said date of shipment.

"4. It is agreed that title of goods covered by this contract, notwithstanding their delivery and no matter whether, or by what manner or degree it may be attached to realty, shall not pass to buyer until entire purchase price thereof, and any notes or note, including renewals, given therefore, is paid and such property shall not be removed from building in which it is first installed, without written consent of seller.

"5. Should buyer fail to pay such indebtedness or any part thereof when due, or breach this contract, or should seller believe buyer of said chattel to be insecure, or if any execution or writ be levied on any of buyer's property, or any receiver thereof is appointed, or if any petition in bankruptcy be filed by or against buyer, entire unpaid balance

shall at once become due and payable at seller's election, and seller, may, without notice or demand, by process of law or otherwise, take possession of said chattels wherever located, and retain all moneys paid thereon for the reasonable use of said chattels, and buyer will pay for necessary repairs because of damage thereto; or seller may sell same at public or private sale and apply proceeds, after deducting expenses, liens and attorneys' reasonable fee paid or incurred by seller, to payment of said note and interest. Buyer waives all claims, damage and demands against seller arising out of repossession, retention, reparation and sale as aforesaid.

"6. Any action from forced payment of said note shall not waive any of sellers rights hereunder. Any indulgences granted buyer shall not constitute a waiver of any of seller's rights.

"7. Any part of this contract contrary to the law in any state shall not invalidate any other part of this contract in that state.

"8. This contract may be assigned, and/or, said note may be negotiated, without notice to buyer, and when assigned, and/or, negotiated, shall be free from any defense, counterclaims or cross complaint by buyer.

"9. Seller is not responsible for failure of delivery or installing said property on account of strikes, fires or any other cause beyond seller's control.

"10. Buyer does further covenant and agree that buyer will not mortgage, pledge or otherwise encumber said apparatus or buyer's interest therein, or dispose of buyer's interest therein, without written consent of seller first obtained, though in any case where balance of any obligation under this contract shall be assumed by any other person or persons, buyer shall nevertheless continue liable for prompt payment of any and all payments which are to be made under said contract and for performance of all other obligations of buyer under said contract.

"11. Said chattels shall remain in personal property and nothing (anything which may be done by parties hereto to the contrary notwithstanding) shall prevent seller from removing same or so much thereof as seller, in its sole discretion, may determine, from any premises to which they may be attached, upon any breach of this contract.

"12. Any extension or assignment of this contract or extension or negotiation of said note shall not waive any provision herein contained.

"13. Seller may at any time, and at its sole discretion, demand that buyer deliver to seller or its agents and buyer agrees to deliver upon demand written instruments to further secure this obligation.

"14. Seller warrants that this equipment will be free from defect in material and workmanship under normal use and services, but that obligation under this warranty is limited to making good at its factory any part or parts thereof which shall, within twelve months after delivery of said equipment, be returned to it with transportation charges prepaid, and which its examination shall disclose to have been defective, as claimed, it being understood that the warranty is given in lieu of any and all warranties, expressed or implied, and all other obligations on the manufacturer's part.

"15. Buyer expressly waives all exemption and homestead laws.

"16. Buyer agrees to pay additional charges for overtime or night work, if he orders same, and to furnish (a) proper opening through which equipment above specified can be conveniently carried; (b) provide free use of elevator or hoists that may be necessary to place said equipment on floor where it is to be used; (c) necessary clear space with proper foundation for said equipment.

"17. Buyer acknowledges receipt of a true copy of this contract.

"18. Provided cost of insurance is paid by buyer, then seller agrees to keep this equipment insured for full value

against loss or damage by fire, from date of delivery until final payment has been made; insurance moneys shall be payable thereunder to seller and buyer as their interest may appear.

"19. This contract covers the entire matter of negotiations between buyer and the Russ Manufacturing Company, no promise or undertaking by a representative of the Russ Manufacturing Company shall be binding unless reduced to writing and made a part of this contract.

"20. It is agreed that this writing shall bind the heirs, executors, administrators and assigns . of the respective parties.

"21. This contract is given subject to acceptance by the Russ Manufacturing Company, at 5700 Walworth Avenue, Cleveland, Ohio."

Under, our view of the case, it is unnecessary to review the testimony adduced at the trial, but we deem it sufficient to state that the same tends to establish the material allegations of the plaintiff's complaint, and, further, in our opinion, the trial Judge reached a correct conclusion in the case. As to the position of appellant, that "the express warranty contained in the written contract entered into by the plaintiff and the defendant excludes the implied warranty of the title alleged to have been breached," we are unable to agree with appellant. It is true, under the well-recognized rule, an express warranty contained in a written contract excludes an implied warranty. But this rule is not applicable to the case at bar. In the first place, in order for the rule to apply, that is, in order for the express warranty to preclude an implied warranty, the warranty in each instance "must relate to the same or a closely allied subject." *Wells v. Spears,* 1 McCord, 421; *Black v. B. B. Kirkland Seed Company,* 158 S. C., 112, 116, 155 S. E., 268, 269. The written warranty upon which the appellant, in the case at bar, relies, reads as follows: "Seller warrants that this equipment will be free from defect in ma-

terial and workmanship under normal use and services, but that obligation under this warranty is limited to making good at its factory any part or parts thereof which shall, within twelve months after delivery of said equipment, be returned to it with transportation charges prepaid, and which its examination shall disclose to have been defective as claimed, it being understood that the warranty is given in lieu of any and all warranties, expressed or implied, and all other obligations on the manufacturer's part."

In connection with the warranty provision in the contract, above quoted, appellant also calls attention to the following provision contained in said contract: "This contract covers the entire matter of negotiations buyer and the Russ Manufacturing Company, no promise or undertaking by a representative of the Russ Manufacturing Company shall be binding unless reduced to writing and made a part of this contract."

It will be readily observed that the written warranty, above quoted from the contract, does not relate to the same subject-matter that the implied warranty under consideration relates. The written warranty is intended to cover defects in the soda fountain in question, whereas the implied warranty under consideration relates to the title to the soda fountain. It is evident that the plaintiff could not hold the property against the claim for taxes against the property. In this connection it may be stated that there was testimony to the effect that the defendant knew at the time the contract involved was executed that there was an outstanding tax claim against the property. It further appears from the testimony that, when the tax officer made a claim against the property involved for the past due taxes, the defendant was notified by the plaintiff of this claim, and that, upon receiving such notice from the plaintiff, the defendant agreed to pay the said taxes, but failed to do so, and did not pay the claim until after this suit was commenced. In our opinion, the implied warranty of

title to the property in question was not precluded by reason of the written warranty as to the property being free of defects.

It further appears from the record that, upon the ■■ failure of the defendant to pay the taxes in question after being notified and the tax collector having notified the plaintiff that he would sell the property under tax execution for the past due taxes thereon, outstanding at the time the said contract was entered into, the plaintiff sent to defendant the rescission of the contract and demand for repayment of the money the plaintiff had paid in connection with the transaction, and, upon the failure of the defendant to make repayment to the plaintiff, the plaintiff, within a reasonable time thereafter, instituted suit for recovery of the same, as damages resulting to the plaintiff. As stated, jurisdiction was acquired by attaching the property in question as the property of the defendant. In our opinion, the plaintiff, under the terms of the contract, had a right to follow this procedure. In this connection we call attention to the fact that defendant gave bond and took possession of the property as its property. The contract, in our opinion, was not an absolute sale, and the defendant did not treat the same as such, and it was in our opinion, under the circumstances, proper for the plaintiff to rescind the contract and make demand for repayment of the money he had paid in connection with the transaction. The case, in this respect, is governed by the principle and rule stated in the case of *Rice v. Hampton,* 106 S. C., 237, 243, 91 S. E., 5, and authorities therein cited.

While we have not discussed in this opinion all of the contentions made by the appellant, we have duly considered the same. The exceptions must be overruled, and it is the judgment of this Court that the judgment of the lower Court be affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.