### MARVIN WILSON SEYMOUR v. W. S. BOYD SALES COMPANY, INCORPORATED.

(Filed 19 September 1962.)

**1. Sales § 14c; Trover and Conversion § 2—**

Allegations to the effect that the chattel sold by defendant was subject to a prior lien in violation of warranty against encumbrances, and that defendant granted plaintiff an extension of time for the payment of the balance of the purchase price, but repossessed the chattel without notice and sold it under the chattel mortgage, *held* to state a cause of action for breach of warranty and a cause of action for wrongful conversion.

**2. Automobiles § 4—**

By provision of statute in North Carolina every seller of a motor vehicle is required to expressly warrant title and expressly list all liens and encumbrances, and the effect of failure to list a lien is a warranty that it does not exist. G.S. 20-72(b), G.S. 20-75.

**3. Same; Sales § 5; Chattel Mortgages and Conditional Sales § 1—**

Where a conditional sale contract for the sale of a motor vehicle provides that if any part of the agreement should be invalid under the laws of the State such part should be deemed amended in conformity with such laws, such contract includes warranty of title and warranty against encumbrances in accordance with State law, irrespective of whether the agreement otherwise contains such warranties and notwithstanding any waiver of implied warranties by provision that no representation or warranties should be binding unless expressly contained in the agreement.

603

**4. Sales § 13—**

Breach of warranty against encumbrances entitles the purchaser to rescind the contract of sale, but if, upon discovery of such breach, the purchaser keeps the chattel and relies on the seller's agreement to discharge the prior lien, he waives his right to rescind.

**5. Sales § 14g—**

Breach of warranty against encumbrances does not entitle the purchaser to anything more than nominal damages until he has paid the amount of the outstanding lien or has been deprived of possession by reason of the lien in question.

**6. Same;  Damages § 5—**

A purchaser who has been deprived of possession or use of the chattel as a result of breach of warranty against encumbrances may not recover the profits he would have realized from the use of the chattel unless he alleges and proves that such special damages were within the contemplation of the parties at the time of the execution of the contract.

**7. Chattel Mortgages and Conditional Sales § 15—**

Where a conditional seller grants an extension of time for the payment of the money due or to become due under the contract, he waives default in the payment of the purchase price and may not repossess during the term of the extension. If the extension of time is not for a definite period it will be construed to be for a reasonable period under the circumstances, and reasonable notice of forfeiture must be given.

**8. Same;  Trover and Conversion § 1—**

Where the purchaser of a motor vehicle, upon discovery of the existence of a prior lien in another state constituting a breach of warranty against encumbrances, advises the seller that the lien precluded his use of the vehicle in such state, and therefore precluded him from earning profits to pay the purchase price, and thereupon the seller agrees to discharge the lien and that no further payment need be made on the purchase price until the matter had been straightened out, the extension of time is supported by consideration and is valid, and the act of the seller in thereafter repossessing the vehicle without notice and selling it under the conditional sale contract constitutes a wrongful conversion.

**9. Trover and Conversion § 2—**

Where the conditional seller wrongfully repossesses and sells the vehicle prior to default or during the time of an extension of time for payment, the measure of damages is the fair market value of the chattel less the indebtedness secured by the conditional sale contract.

**10. Pleadings § 34—**

The court wrongfully strikes allegations of fact constituting a statement of a good cause of action, but the striking of allegations which are merely repetitious of matter appearing in an exhibit attached to the complaint will not be held for error.

**11. Same;  Damages § 11—**

Allegations in regard to the loss of prospective profits are properly

striken on motion when the complaint does not lay the predicate for the recovery of special damages by allegation that such damages were within the contemplation of the parties at the time the contract was executed.

APPEAL by plaintiff from *Copeland, J.,* January 1962 Civil Term of CURRITUCK.

The allegations of the amended complaint, summarized in part and copied verbatim in part, are as follows:

1. Plaintiff is a resident of Currituck County, and defendant is a North Carolina corporation having its principal office in Raleigh.

2. Plaintiff is in the business of transporting goods by truck for hire in several eastern States, including New York.

3. On 24 October 1960 plaintiff purchased of defendant a diesel tractor for use in his business, and the written sales agreement is made a part of the complaint. "That as shown by said sales agreement, the plaintiff contracted to buy said vehicle and pay the amount of $10,792.32 after the payment in cash of $500.00 and delivery to defendant of his 1956 Chevrolet tractor, for which he was allowed $1,000 on the purchase price. That the defendant company financed the amount owing it by the plaintiff with Universal C.I.T. Credit Corporation upon plaintiff executing to said defendant corporation a conditional sales contract on said tractor, which plaintiff bought from the defendant. The total cost to the plaintiff after financing and paying for the insurance that he was required to take out to enable him to operate throughout the territory, being in the amount of $12,692.32."

4. Defendant represented to plaintiff that it owned the diesel tractor and "that there were no liens or claims against it and that they were empowered to convey to him title absolute to same."

5. Plaintiff applied for a license in New York to operate the tractor in that State and about 7 November 1960 was advised that New York held a fuel tax lien in excess of $348 against the tractor and no license would be issued until the lien was discharged. Plaintiff immediately notified defendant, and defendant promised to promptly "lift" the lien but failed to do so, and on 5 December 1960 when plaintiiff made inquiry he was told by Mr. Wood, an employee of defendant, that the matter would be "straightened out" within a few days.

6. When plaintiff was advised by defendant that it had been unable to lift the lien "they precluded him from following his business in New York State where most of his profits were derived, he stated to it that until this lien was lifted in order that he could use the truck for the purpose for which he bought it, he would be unable to pay the installment payments under his contract; that Mr. Wood, on or about

December 5, 1960, stated to him that until they had the matter straightened out, he would not be required to make any further payments."

7. "That approximately three weeks later, on or about December 26, 1960, the plaintiff called the defendant company again and talked with the credit manager and told him that he could not make payments because he was unable to use his truck for any profitable operation; further stating to him that he had received a request from the C.I.T. Credit Corporation for payment on the conditional sales contract, whereupon the credit manager of the defendant corporation stated to him that he would contact C.I.T. Credit Corporation and have them hold the matter in abeyance until the lien was lifted."

8. "That two or three weeks following the conversation had with the credit manager of the defendant corporation, on or about February 1, 1961, and while his truck was at the Forehand Garage at Hickory, Virginia for the purpose of changing two tires thereon, the defendant company, without notice to this plaintiff, went to the premises of the Forehand's Garage and took the truck from the possession of this plaintiff."

9. "That because of the plaintiff being unable to use the tractor for the purpose for which it was bought, being precluded from operating in the State of New York where the greater amount of the profits from his operation were derived, he was unable to make any of the payments and when final demand was made upon him for the purpose of bringing the account current, he was helpless to do anything about it; that being notified that the truck had been taken and was being offered for sale, he was unable to raise the amount of money necessary to put it back in good financial status and had to suffer the loss of it."

10. "That by reason of the wrongful taking of said tractor from him, because the defendant corporation failed to live up to their agreement and to release the truck to him lien-free in order that he could successfully operate it in and through New York State, he was caused to lose the value of his Chevrolet tractor, which was placed at $1,000 and the $500 cash payment made by him at the time of the purchase; that for a period of three months he was unable to operate said tractor, which resulted in a loss to him of approximately $250.00 per week, which amount he had enjoyed in other operations of like character over a period of many years. That the loss in the operation of the truck freely, as he was entitled to do had the defendant corporation relieved the truck of the lien placed upon it so that it would have been free for the use for which it was purchased, he would have enjoyed a profit of the amount of $3,000 or some other large amount. That the defendant corporation by failure of it to live up to its contract has

caused plaintiff to suffer loss in the amount of $4,500 or some other large sum."

Defendant moved to strike from the amended complaint all of paragraphs 3, 7, 8, 9 and 10 and those portions of paragraphs 4 and 6 which are quoted verbatim above.

The court sustained the motion as made, except that all of paragraph 6 was stricken and that portion of paragraph 3 which is quoted verbatim above.

Plaintiff appeals.

*J. W. Jennette for plaintiff appellant.*
*Bailey and Dixon for defendant appellee.*

MOORE, J. In Supreme Court defendant demurred *ore tenus* on the ground that the amended complaint does not state facts sufficient to constitute a cause of action. *Hall v. Coach Co.,* 224 N.C. 781, 32 S.E. 2d 325. Construing the pleading liberally in favor of pleader, as we are required to do (*Glover v. Brotherhood,* 250 N.C. 35, 108 S.E. 2d 78), we find that it alleges facts sufficient for causes of action, (1) for breach of warranty of title and against encumbrances, and (2) for wrongful conversion. The demurrer is overruled.

There remains for decision the question: Did the court below err in striking the challenged allegations from the amended complaint?

Plaintiff has not been put to an election as to which of the causes of action he will prosecute. Hence a brief discussion of the pleading and applicable legal principles is appropriate as a basis for determining whether or not the allegations should have been stricken.

As to breach of warranty, the amended complaint alleges in substance: On 24 October 1960 defendant sold and delivered to plaintiff a second-hand diesel tractor. Plaintiff made a down payment consisting of $1500 cash (according to conditional sale contract) and a truck valued at $1000, and the parties entered into a conditional sale contract providing for the payment of the balance of the purchase price in installments, the first installment to be due 10 December 1960. About 7 November 1960 plaintiff discovered that there was a fuel tax lien against the tractor in the State of New York and that he could not obtain a permit to operate the truck in that State until the lien was removed. He promptly advised defendant of the lien and defendant promised to have it discharged immediately. Plaintiff waited until 5 December 1960 and then stated to defendant that he could not operate the tractor profitably unless he could use it in New York and could not make the payments unless he could make profitable use of the vehicle. Defendant again promised to remove the lien. Defend-

ant failed to discharge the lien and instead repossessed and sold the tractor. Plaintiff has suffered loss of profits, his cash payment and the trade-in truck.

"It is elementary that in the sales of personal property there is an implied warranty of a good title upon the part of the vendor, and this warranty extends to and protects against liens, charges and encumbrances by which the title is rendered imperfect and the value depreciated thereby." *Martin v. McDonald,* 168 N.C. 232, 233, 84 S.E. 258; *Hodges v. Wilkinson,* 111 N.C. 56, 15 S.E. 941. Accord: Uniform Sales Act, s. 13; Uniform Commercial Code, s. 2-312(3): 1 Williston: Sales (Rev. Ed. 1948), s. 218. This rule also applies to sales made pursuant to conditional sale contracts. *Old Pueblo Motors, Inc. v. Abarca,* 288 P. 666 (Ariz. 1930); *McDonnell Motor Hauling Co. v. Morgan Constr. Co.,* 235 S.W. 998 (Ark. 1921); *Bowen v. Dawley,* 101 N.Y.S. 878 (1906). At common law an action for breach of warranty upon a conditional sale contract would not lie until the conditions had been fulfilled and title had passed, but the Uniform Sales Act has changed the common law in this respect. *Groenland v. Phoenix Sprinkler & Heating Co.,* 216 N.W. 431 (Mich. 1926). While North Carolina has not adopted the Uniform Sales Act, its decisions are in substantial accord with the Act in this regard, *Case Co. v. Cox,* 207 N.C. 759, 178 S.E. 585; *Huyett & Smith Mfg. Co. v. Gray,* 124 N.C. 322, 32 S.E. 718. The conditional sale contract in the case at bar provides that "Title to the car (sic) is retained by seller until . . . time balance is fully paid . . ., when title shall pass to the customer." Such provision has been held to be an express warranty of title and against encumbrances. *Yattaw v. Onorato,* 17 A. 2d 430, 132 A.L.R. 334 (R.I. 1941); *Rundle v. Capitol Chevrolet,* 129 S.W. 2d 217 (Tenn. 1939); *MacDonald v. Mack Motor Truck Co.,* 142 A. 68 (Me. 1928); *Pierce v. Banton,* 57 A. 889 (Me. 1904). Or, at the very least, an implied warranty of title. *Smith v. Mfg. Co.,* 166 S.E. 607 (S.C. 1932); *McDonnell Motor Hauling Co. v. Morgan Constr. Co., supra; Bowen v. Dawley, supra.* The contract in the instant case also states that "No agreement, representation or warranty shall be binding . . . unless expressly contained herein." Defendant contends that this constitutes a disclaimer and waiver of any and all implied warranties. The trend of decisions in this jurisdiction is to give effect to such disclaimer clauses in contracts. *Petroleum Co. v. Allen,* 219 N.C. 461, 14 S.E. 2d 402; *Woodridge v. Brown,* 149 N.C. 299, 62 S.E. 1076. See also 39 N.C. Law Rev. 299 (1961). However, none of the North Carolina cases deal with warranties of title. And on this record it is unnecessary to deal with the effect of the disclaimer clause or to decide whether the retention of title provision constitutes an express warranty. The

contract further declares: "If any part hereof is invalid under the applicable laws or regulations of the State . . . such part shall be deemed amended to conform thereto." Under the laws of North Carolina the seller of a motor vehicle is required to endorse, and deliver to or for the buyer, an assignment and warranty of title and a statement of all liens and encumbrances, even where a conditional sale is involved G.S. 20-72(b); G.S. 20-75. Strict compliance with these requirements is necessary in every sale of motor vehicles. Every such seller is therefore required to expressly warrant title and expressly list all liens and encumbrances. The effect as to unlisted liens is a warranty that they do not exist. By the terms of the contract on this record these warranties are included in and are a part of the contract.

The complaint alleges facts sufficient to constitute a cause of action for breach of warranty. Upon discovery of the New York fuel tax lien one of two courses was open to plaintiff. First, he could have rescinded the contract, returned or offered to return the tractor to the seller, demanded refund of his cash payment and return of the truck or its value, and upon refusal of defendant to accede, he could have maintained an action for the down payment and the truck. *Hajoca Corp. v. Brooks,* 249 N.C. 10, 105 S.E. 2d 123; *Close v. Crossland,* 50 N.W. 694 (Minn. 1891). Plaintiff elected not to rescind. He did not return or offer to return the tractor; he did not demand the return of his down payment and truck; he kept the tractor and relied on defendant to perfect the title. Thereby, plaintiff waived his right to rescind. He chose the other course, an action for damages for breach of warranty against encumbrances. In such action, a buyer cannot recover anything more than nominal damages until he has paid the amount of the outstanding lien or has been deprived of possession by reason of the lien in question, except where he alleges and proves some special damages which were within the contemplation of the parties at the time the contract of sale was made. *Close v. Crossland, supra; Paul Hellman, Inc. v. Reed,* 366 P. 2d 391 (Okla. 1961). See also 77 C.J.S., Sales, s. 385, p. 1341. North Carolina has applied this rule in real estate transactions. *Fishel v. Browning,* 145 N.C. 71, 58 S.E. 759; *Lane v. Richardson,* 104 N.C. 642, 10 S.E. 189. The loss of anticipated profits may not be recovered in the absence of allegation and proof that they were within the contemplation of the parties at the time of the execution of the contract of sale. *Wentworth & Irwin, Inc. v. Seals,* 56 P. 2d 324 (Ore. 1936). See also *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592.

As to the cause of action for wrongful conversion, the complaint alleges, in substance, the following facts, in addition to those sum-

marized above: On 5 December 1960 when plaintiff told defendant he would be unable to make installment payments until the lien was discharged and the vehicle could be operated in New York, defendant stated "that until they had the matter straightened out, he would not be required to make any further payments," and thereafter defendant stated that it "would contact C.I.T. Credit Corporation and have them hold the matter in abeyance until the lien was lifted." About three weeks later defendant, without notice to plaintiff, seized the truck and thereafter sold it. Plaintiff was without means to redeem it. The lien was not discharged before the seizure.

Where a conditional seller grants an extension of time for the payment of money due or to become due under the contract, the general rule is that he waives default in payment and the right to forfeit the contract for that default until the expiration of the extension period. *Carmichel v. Guenette,* 6 S.E. 2d 365 (Ga. 1939); *Valicenti v. Central Motors, Inc.,* 174 A. 799 (Pa. 1934); *Sackler v. Slade,* 114 S. 396 (Miss. 1927). The extension of time may be for an indefinite period, in which case time is extended for a reasonable period under the circumstances and reasonable notice of forfeiture must be given. *Calhoun v. Universal Credit Co.,* 146 P. 2d 284 (Utah 1944); *Central Ins. Co. of Baltimore v. Ehr.,* 139 P. 2d 701 (Wash. 1943). It has been held that no new consideration is necessary to support an extension of time, but this seems to be the minority view. *Carmichel v. Guenette, supra.* In any event, from the facts alleged, there was sufficient consideration in the case at bar to support the promise to extend the time for payment.

Where the conditional seller wrongfully deprives the buyer of possession or wrongfully withholds possession from him, he is guilty of conversion, and the buyer may maintain an action for damages caused by the conversion. *Calhoun v. Universal Credit Co., supra; Schenectady Discout Corp v. Dziedzic,* 31 N.Y.S. 2d 636 (1941); *Southern Arizona Bank & Trust Co. v. Stigens,* 53 P. 2d 422 (Ariz. 1936); *Valicenti v. Central Motors, Inc., supra.* Where the conditional vendor takes the property sold from the possession of the vendee and assigns as the reason therefor the default of the vendee in making payments, it has been held that the taking is a wrongful conversion when there has been in fact no default, or when the period of extension of the time for making payment has not ended. *Schenectady Discount Corp. v. Dziedzic, supra; Calhoun v. Universal Credit Co., supra.* Also see *Binder v. General Motors Acceptance Corporation,* 222 N.C. 512, 23 S.E. 2d 894. In the instant case, by virtue of the alleged agreement of the seller to extend the time for payment of installments, the seizure of the tractor was wrongful and amounted to a conversion of the

property. The measure of damages in an action for conversion is the fair market value of the property taken, less the secured indebtedness, if any, of the plaintiff thereon. 78 C.J.S., Sales, s. 630, p. 437; *C.I.T. Corp. v. Watkins*, 208 N.C. 448, 181 S.E. 270; *Elmore v. Ritter Implement Co.*, 87 S.W. 2d 1008 (Tenn. 1935); *Hardin v. Marshall*, 5 S.W. 2d 325 (Ark. 1928).

In the light of the foregoing discussions, we are of the opinion, and so hold, that the court below erred in striking paragraphs 6, 7, 8 and 9 of the amended complaint, and also erred in striking the indicated portion of paragraph 4. Paragraph 10 was properly stricken. The indicated portion of paragraph 3 is merely a repetition of some of the facts set out in the conditional sale contract, which is a part of the amended complaint, and it was not error to strike this repetitious matter.

The allegations of paragraphs 4, 6, 7, 8 and 9 are not sufficiently evidentiary in nature to prejudice defendant, and will not be stricken on this ground.

The judgment below will be modified to conform with this opinion.

Plaintiff may desire to ask leave to amend his pleadings so as to draw the pertinent issues into clearer focus.

Modified and affirmed.