CRITCHER v. PORTER CO.

(Filed May 24, 1904).

1. SALES—*Damages—Measure of—Warranty—Contracts.*

   In the absence of special circumstances, the measure of damages for breach of warranty as to the quality or capacity of machinery sold is the difference between the contract price and the actual value, with special damages which were in contemplation of the parties.

2. SALES—*Warranty—Damages—Measure of—Contracts.*

   Where machinery fails to come up to the warranty thereof, the buyer may refuse to keep it, and recover for the amount paid thereon, together with such damages as he sustained and which were in contemplation of the parties.

3. SALES—*Warranty—Damages—Measure of—Contracts.*

   In an action for breach of warranty as to saw-mill machinery the purchaser cannot recover for loss of profits on lumber contracted to be sold, if the contract was not known to the seller.

CRITCHER *v.* PORTER CO.

4. DAMAGES—*Warranty—Contracts—Sales.*

> In an action for breach of warranty on the sale of an engine for use in a saw-mill, under a warranty that it will develop a certain horse-power, or that defendant will make it do so, the plaintiff is entitled to recover expenses incurred in running the mill at the request of the defendant.

5. DAMAGES—*Warranty—Contracts—Sales.*

> In an action for breach of warranty on the sale of an engine for use in a saw-mill plaintiff is entitled to interest on the amount invested in the mill for the time it was idle.

ACTION by Roger Critcher against the Porter-McNeal Company and others, heard by *Judge G. S. Ferguson* and a jury, at September Term, 1903, of the Superior Court of MARTIN County.

The plaintiff alleged that he contracted with the defendants for the purchase of an Erie City 25 horse-power, 10x12 horizontal center-crank engine, together with other machinery for the equipment and operation of a saw-mill, at the agreed price of $1,150, to be paid partly in cash and the balance in several installments, for which he was to execute his promissory notes secured by a deed in trust. The deed sent to the plaintiff for execution described the engine as "one 25 H. P., 9x12 horizontal center-crank engine." Plaintiff wrote defendants, calling attention to the fact that the engine was described in the deed as 9x12, while he had contracted for one 10x12, and for that reason declined to execute the notes and deed. That defendants in reply wrote that they would guarantee that the engine described, and which they would send, "would develop 25 horse-power and be plenty large to operate plaintiff's mill." That plaintiff, relying on said guaranty, before the engine arrived signed the deed in trust and notes and sent them to defendants with the cash payment of $400. That after the engine was put up it was found that it would not cut the logs, wanting power to do so.

The plaintiff complained to defendants and they urged him to continue to use the engine and the trouble would disappear. That defendants urged that the oil used by plaintiff was not of good quality. That after giving defendants full opportunity to make good their guaranty, they having failed to do so for nine months, plaintiff put the engine aside and notified defendants that it was held subject to their order. Defendants thereupon advertised the property conveyed in the trust deed for sale. This action is brought for the purpose of enjoining the sale of the property and to recover damages by way of recoupment, etc. The sale was enjoined. The defendants denied the material averments in the complaint. The Court, without objection, submitted the following issues:

1. "Did the defendants guarantee that the engine sold to plaintiff would develop 25 horse-power?" To which the jury answered "Yes."

2. "Would the engine sold to plaintiff develop 25 horse-power?" To which the jury answered "No." The plaintiff's damages were fixed at $98. The balance found due the defendants on the note was fixed at $411, with interest, and subject to the $98 damage.

The plaintiff testified in regard to the contract and guaranty. He further testified that he signed the trust deed upon the faith of the guaranty. The engine was received about the 8th day of May, and was put up by experienced machine men. From the beginning plaintiff saw that it would not cut; found the trouble to be that it lacked power. It got worse all the time and he continued to complain to the defendants. They sent a man out to examine it. He did not remedy it. Plaintiff, at the instance of defendants, sent engine to them at Norfolk. Was gone a week or ten days. Shortly after its return Mr. Hardy came again to overlook it. He did nothing to it. Plaintiff asked him how he could tell whether it would develop 25 horse-power. He said if it

CRITCHER v. PORTER CO.

didn't cut a blind line with eighty pounds of pressure on fast speed, it would not develop 25 horse-power. Plaintiff urged him to test it, but he declined. He said that plaintiff was not using proper oil; gave him order for twenty-five gallons such as he recommended. The engine did no better with new oil. Plaintiff wrote to defendants frequently that they must do something to remedy the trouble. They continued to assure the plaintiff that it would improve and they would remedy it. Plaintiff finally wrote defendants that unless something was done at once to remedy the trouble he would be obliged to put it aside and purchase another, which plaintiff finally did. Was trying to use it nine or ten months, relying upon the assurance of defendants that it would get all right or they would remedy it. It was idle two-thirds of the time. It would never develop 25 horse-power. Plaintiff testified: "I had been operating a mill previous to the time I made the contract with the defendants. Had between $1,200 and $1,500 invested in mill and other fixtures, and $1,500 to $2,000 additional in logs and teams. Had five men engaged by the year in the service of the mill (giving amount of wages paid, etc.). They were idle part of the time. In addition I had drivers, loggers and some men cutting logs in connection with the mill. The teams were idle when the mill was not running. I had commenced to cut logs for the mill before I contracted with the defendants. Had a quantity of logs on hand. I lost on account of the idleness of the mill."

The plaintiff proposed to prove that, at the time of his contract with defendants, plaintiff had contracted with reliable parties for the sale of the output of his mill at a stipulated price, and that plaintiff was unable to comply with said contract on account of the failure of the defendants to furnish the engine contracted for. This evidence was offered upon the question of damages, and, upon objection, was excluded.

135——35

Plaintiff excepted. The plaintiff further testified that the engine which he got was afterwards priced by defendant Porter at $168. That a fair output of a 25 horse-power engine was 6,000 to 8,000 feet a day. The engine furnished did not average over 1,500 feet a day. That the usual profits during the time the engine was in use was $1.50 per thousand feet clear of expenses. He had a quantity of logs. On account of idleness of mill between 12,000 and 20,000 feet were not hauled from the woods.

His Honor instructed the jury in regard to the measure of damages as follows: "If you should find that the engine in question would not develop 25 horse-power, then the measure of the damages which the plaintiff is entitled to recover is the difference between the price paid or agreed to be paid for the engine and the real or true value of the engine in fact sold and delivered to the plaintiff. There is no fixed price stipulated for the engine in the written contract between the parties. So you will inquire and ascertain from the evidence what was the price charged for the engine furnished the plaintiff, and subtract the real value of the engine furnished at the time it was received from the price charged, and the remainder is the measure of the plaintiff's damage in this case, if you should find the second issue in his favor." Plaintiff asked certain instructions, which were refused, and to such refusal plaintiff excepted, and from a judgment from the verdict appealed.

*Gilliam & Martin,* for the plaintiff.
*Harry W. Stubbs* and *H. S. Ward,* for the defendants.

CONNOR, J., after stating the facts. The only question presented by the plaintiff's exceptions relates to the kind and measure of damages to which he is entitled upon the evidence and finding of the jury. It is well settled by all of the text-

books and adjudged cases that, in the absence of any special conditions or special damage, the true measure of damages for breach of warranty as to the quality or capacity of machinery sold is the difference between the contract price and the actual value. *Kester v. Miller,* 119 N. C., 475; *Mfg. Co v. Gray,* 126 N. C., 108. There are cases, however, to be found in our Court and the courts of other States in which, by reason of special and peculiar circumstances other elements of loss enter and may be recovered as damages. If the plaintiff had, immediately upon the receipt of the engine, ascertained that it did not develop 25 horse-power as warranted to do, rejected it, or, as he expresses it, "put it aside," notifying the defendant thereof, it is clear that he would have been entitled to recover the amount paid and to a cancellation of his notes and the trust deed, together with such damage as he sustained and which were within the contemplation of the parties in his effort to use it. If he had retained and used it, his measure of damage would have been the difference between the contract price and the actual value of the engine, with such special damages as were within the contemplation of the parties. Joyce on Damages, section 1716.

The question before us is, however, complicated by the fact that a contract collateral to the principal one was made by the parties. The plaintiff knew that the engine which he accepted, and for which he paid in cash and notes, was not the same which he contracted for. He accepted it with a contract of guaranty that it would develop 25 horse-power, or that the defendant would make it do so. This contract was not performed on the part of the defendant, and for which breach of contract he claims damages. It was not contemplated that the engine should be returned until the defendants were given a reasonable time within which to make it develop 25 horse-power. Therefore the rule usually applicable to breaches of warranty in the sale of machinery does not

apply. We are of opinion that after a reasonable opportunity given the defendants to make good the guaranty the plaintiff had the right to reject the engine. If he had paid for it he could have sued for damages, and it would seem that the measure of his recovery would be the amount paid and such incidental or special damage as was within the contemplation of the parties, and as he had sustained, subject to be reduced by a fair rent of the engine while using it. If instead of rejecting it he retained the engine, he would recover the difference between the contract price and its real value, with special damages, subject to the same deduction.

The courts find difficulty in defining and fixing the limits to what are termed special damages. All authors and Judges concur that the rule or principle to be followed is that laid down in the leading case of *Hadley v. Baxendale:* "When two parties make a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in a great multi-

CRITCHER *v.* PORTER CO.

tude of cases not affected by any special circumstances for such breach of contract; for, had the special circumstances been known the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would have been very unjust to have deprived them."

The Judges concur in the principle, but find great difficulty in applying the rule to the ever-varying cases which are presented for adjudication. Simple contracts of purchase with warranty as to soundness or quality are of easy solution. But when, by varying the orginal contract, either attaching new agreements or conditions, or making contracts collateral to the original, thus introducing difficult and complicated elements, the courts find it extremely difficult to apply general principles working out satisfactory results. *Beasley, C. J.,* in *Crater v. Binninger,* 33 N. J., 513, 97 Am. Dec., 737, referring to the rule laid down in *Hadley v. Baxendale, supra,* says: "This is the usual statement of the rule, but the difficulty has been to apply this general proposition to this particular case; for, in any attempt to examine causes in connection with their effects, it will be soon apparent that some criterion is necessary by which to decide what result is proximate and what remote, in a legal sense, to the given act. The standard set up by the decisions above cited supplies to a reasonable degree this deficiency. The test is that those results are proximate which the wrong-doer from his position must have contemplated as the probable consequences of his fraud or breach of contract." *Mace v. Ramsey,* 74 N. C., 11.

The testimony discloses a contract for the sale of an engine of a certain make, size and capacity. It would seem a reasonable inference that the seller knew that it was to be used to run a saw-mill for cutting logs into boards. His guaranty must, in the light of these facts, be construed as an assurance that although the engine was 9x12 instead of 10x12, as

contracted for, it would develop for this particular use the same power as the engine contracted for, or that they would make it do so. This of course involved the idea that the plaintiff was to put it in position for use and use it, giving the defendants a reasonable time and opportunity to fulfill their contract.

What damage would usually result from a breach of this contract? What would a man selling such machinery, knowing the use to which it was to be put, the place to which it was to be sent, etc., have reasonably contemplated as the result of a failure to make this develop 25 horse-power? The plaintiff offered to show, at the time of making the contract, he had contracted with reliable parties for the sale of the output of his mill at a stipulated price. The refusal to permit him to show this is the basis of his first exception. It is well settled that, while for breach of contract the law seeks to give full compensation for actual loss sustained, it will not undertake to estimate uncertain profits. We think that in the absence of any knowledge on the part of the defendants that the plaintiff had made such a contract, damages resulting from it could not be said to be within their contemplation. There is the further objection that the plaintiff did not offer to show that he had logs on hand sufficient to run the mill any given number of days, or for what time the contract extended. If the question as stated in the record had been answered, the jury could not possibly have made it the basis for assessing damages. There were too many elements of uncertainty involved to form the basis of any verdict. It may be that the plaintiff intended to show how these matters were, but we must pass upon the exception as presented to us in the record.

In *Lewis v. Rountree,* 79 N. C., 123, 28 Am. Rep., 309. the plaintiff was permitted to recover upon the basis of the price of the rosin in New York, to which point it was

shipped, for the reason that it was purchased for that purpose and the defendant had notice of it. In *Mace v. Ramsey, supra,* the boat was hired for a particular occasion and the plaintiff had engaged a certain number of passengers at an agreed price. The Court held that such loss as ensued was within the contemplation of the parties. In *Mfg. Co. v. Rogers,* 19 Ga., 416, it was held that damages could not be recovered for failing to ship machinery for a cotton mill based upon anticipated profits from the output of the mill, *Lumpkin, J.,* saying: "The gains were too remote and uncertain, depending upon a variety of contingencies, the failure of any one of which would subvert the whole computation."

The slightest reflection will show the number of contingencies attending a sale of the output of a saw-mill—the weather, a breakdown of the mill, failure to get logs, etc. *Sycamore Co. v. Strum,* 13 Neb., 210. His Honor properly excluded the testimony.

The plaintiff excepts to the refusal of the Court to give certain special instructions, first, that the plaintiff is entitled to recover reasonable rent and insurance for the buildings, which were idle by reason of the delay of the defendants to furnish an engine according to contract. We find no evidence upon which to base this instruction. The plaintiff says nothing of any buildings being idle or of any insurance paid. The same is true in regard to the second prayer. There is no evidence that the logs were damaged, or, if so, to what amount.

The third prayer is based upon the principle announced in *Kester v. Miller, supra.* The plaintiff was entitled to this instruction. For the reasons given in that case, the plaintiff is entitled to such damages as he sustained while operating the mill at the defendant's request to enable them to make the engine develop 25 horse-power. The defendants knew that the mill was being operated at their request and

for their benefit. They knew that it required hands, teams, etc., to operate the mill, and any loss sustained in doing so must have been within the contemplation of the parties. It is true the evidence on this question is very meager, and if there was no more than we find in the record the jury would have found difficulty in assessing the plaintiff's damages. There was, however, some evidence of the number of hands engaged about the mill, the price paid them, and the difference per day in the output of the mill as it was and should have been according to the contract, and the value thereof. This exception must be sustained. *Mfg. Co. v. Rogers*, *supra.* This ruling does not include hands and teams employed in logging. It includes only those employed in running the mill.

The fourth prayer is disposed of by the ruling upon the rejection of the proposed evidence. The same ruling applies to the fifth prayer. The sixth is included in the disposition of the third prayer. The seventh prayer is disposed of by what is said in regard to the fourth. There is no evidence that the defendant knew of the employment of teams, etc., for logging the mill. The eighth prayer, in so far as it applies to the amount invested in the milling outfit, should have been given. For any time that the milling machinery was idle the plaintiff is entitled to interest on the amount invested. *Boyle v. Reeder,* 23 N. C., 607 ; *Rocky Mt. Mills v. Railroad,* 119 N. C., 693, 65 Am. St. Rep., 682.

There is no evidence to sustain the ninth prayer, and the same is true as to the tenth.

We have carefully examined the entire record. For the reasons pointed out, there must be a new trial on the third issue as to damages.

The plaintiff will recover the costs in this Court.

New Trial.