### HAJOCA CORPORATION v. R. M. BROOKS.

(Filed 8 October, 1958.)

**1. Trial § 53—**

When Ch. 1337, Session Laws of 1955, is made applicable to a particular county by proper resolution of its board of county commissioners, the provision of the statute relating to waiver of trial by jury, G.S. 1-539.5, supplements G.S. 1-184 and is to be construed in *pari materia* therewith so that G.S. 1-185, G.S. 1-186, and G.S. 1-187 apply equally to a "small claims action" under the 1955 statute.

**2. Sales § 24—**

Upon breach of material warranty, the purchaser may either rescind and recover the purchase price, or affirm the contract and recover the damages caused by the breach of warranty, but these remedies are alternative and inconsistent, and are mutually exclusive.

**3. Sales § 25—**

Ordinarily, the buyer waives and loses the right to rescind if, after he discovers or has reasonable opportunity to discover the defect, he continues to use the chattel for his own purposes.

**4. Same— Evidence held to show that purchaser waived his right to rescind sale for breach of warranty.**

Evidence tending to show that defendant purchased a heating and air conditioning unit, which was complete in itself and required only connection to outside wiring to put it into operation, that the unit was installed in defendant's house, that the unit was unsatisfactory because of defect in the automatic control, without evidence that the unit was unsatisfactory while in operation, and that defendant continued to use the unit after the defect had been discovered and after the seller had ceased to make any effort to remedy the defect, and did not tender possession of the unit back to the seller until some six months thereafter. *Held:* The evidence does not support a finding of total failure of consideration on the ground that the unit was worthless or findings to the effect that the purchaser was entitled to rescind and did rescind the contract, the right to rescind having been waived by the continued use of the unit. Further, the legal effect of any notice of an election to

rescind prior thereto was nullified by the continued possession of the unit for use by the purchaser and not merely possession in compliance with the purchaser's duty as bailee of the seller after rescission.

JOHNSON and PARKER, J. J. not sitting.

APPEAL by plaintiff from *Craven*, Special J., April 7th Special Civil Term, 1958, of MECKLENBURG.

As to plaintiff's action, there is no controversy. Defendant admitted that, for supplies other than the heating and air conditioning unit, he owed plaintiff a balance of $616.37.

The controversy relates solely to the heating and air conditioning unit; and the issues arise upon the defendant's counterclaim and plaintiff's reply.

This unit, sold by plaintiff to defendant, was delivered to defendant on or about September 14, 1955; and, upon delivery, defendant paid to plaintiff the agreed purchase price of $982.06.

The allegations of defendant's counterclaim, summarized, are these: Plaintiff warranted the unit to be new, in good condition and free from all defects, but in fact it was defective and failed to operate properly both as a heating unit and as an air conditioning unit. When this was called to plaintiff's attention, agents of plaintiff inspected and repaired the unit but were never able to put it in proper operating order. Defendant "continued to call upon the plaintiff to repair the defects in said unit and has requested it on numerous occasions to put the said unit in the proper operating condition which the plaintiff has failed and refused to do." Other experienced heating and air conditioning repairmen, called on by defendant, undertook "to make said unit operate properly"; but "these said repairmen have likewise been unable to remedy the defects in said unit and said unit has never operated properly or in a satisfactory manner." The unit will not operate properly and is worthless; and, on account of failure of consideration, defendant is entitled to recover from plaintiff the amount paid by him to plaintiff as purchase price therefor. And defendant alleged: "10. That the defendant hereby tenders to the plaintiff possession of said unit to be used by the plaintiff, and to do whatever it may desire with it." (Note: Defendant's pleading was verified December 21, 1956.)

In reply, plaintiff denied defendant's allegations relating to warranty and to defects in the unit. It averred that any failure of the unit to operate properly was due to faulty installation, with which plaintiff had no connection. In addition, plaintiff averred that "said equipment has been in operation in the defendant's home for a period of some 15 to 16 months and the defendant has not at any time prior to the filing of his answer and cross-action tendered or sought to have

said equipment returned to the plaintiff, . . .''

The court below entered judgment as follows:

"The above-captioned civil action coming on for trial before the undersigned presiding Judge . . ., without a jury, and being heard by the undersigned Judge sitting as a jury; and the Court finding the facts to be from the evidence and stipulations as follows:

"1. That the plaintiff sold and delivered to the defendant various articles of plumbing, heating and air-conditioning supplies and, specifically an automatic furnace and air-conditioning unit invoiced September 14th at a price of $982.06;

"2. That the defendant has paid the entire account sued on except for a balance remaining unpaid in the amount of $616.37;

"3. That the plaintiff warranted the air-conditioning and heating unit, which will hereinafter be referred to as the 'unit,' to be new and in good condition and free from all defects;

"4. That said unit was defective and failed to operate properly and would not and has not operated in a reasonably satisfactorily *(sic)* manner; that the unit was defective in the internal wiring of the said unit so that intermittently it would cut itself off without apparent reason;

"5. That by reason of the defect in said unit it was not reasonably suitable for the purpose of heating or of air-conditioning the defendant's home;

"6. That there was a total failure of consideration;

"7. That the defendant rescinded his contract and tendered the defective unit back to the plaintiff;

"8. That the unit was invoiced by the plaintiff to the defendant on September 14, 1955; that the rescission was effected sometime in the Spring of 1956 and within a reasonable period of time after the unit was first placed into operation in the defendant's home, which home was not occupied by the defendant until sometime in the spring of 1956.

"That upon the foregoing findings of fact the Court concludes that the defendant is indebted to the plaintiff on the cause of action stated in the complaint in the amount of $616.37; that the plaintiff is indebted to the defendant on the counter-claim stated in the further answer and defense in the amount of $982.06, being the invoice price of the said defective unit; that the plaintiff is entitled to take into his possession the said defective unit by reason of the rescission of the contract and the said plaintiff is the owner of said defective unit and entitled to have the same; that setting off the debt of the defendant to the plaintiff in the amount of $616.37 from the amount due to the defendant which is $982.06 leaves a balance due and owing to the defendant in the amount of $365.69.

"Now, therefore, IT IS ORDERED, ADJUDGED AND DE-CREED that the defendant have and recover of the plaintiff the sum of $365.69 and that, upon a payment of this judgment, the plaintiff be put into possession of the said defective unit."

Plaintiff excepted and appealed, basing its assignments of error on exceptions to findings of fact 3, 4, 5, 6, 7 and 8, and to the judgment.

*Brock Barkley for plaintiff, appellant.*
*Mason & Williamson for defendant, appellee.*

BOBBITT, J. It appears from the record and briefs that the trial was conducted by Judge Craven, without a jury, as a "small claims action," for which provision is made by Ch. 1337, Session Laws of 1955. When made applicable to a particular county by appropriate resolution of its board of county commissioners, the right to jury trial in such county may be waived as provided in said statute. To this extent, said statute supplements G.S. 1-184. Construing these statutes *in pari materia,* it is clear that the provisions of G.S. 1-185, G.S. 1-186 and G.S. 1-187, relating to proceedings upon waiver of jury trial under G.S. 1-184, apply equally when a jury trial is waived under said 1955 statute.

There was ample evidence to support the court's findings of fact as to the alleged warranty and plaintiff's breach thereof. Originally, defendant had the right either to rescind and recover the $982.06 or to affirm the contract and recover the damages caused by plaintiff's breach of warranty. *Hendrix v. Motors, Inc.,* 241 N.C. 644, 86 S.E. 2d 448; *Robinson v. Huffstetler,* 165 N.C. 459, 81 S.E. 753; *May v. Loomis,* 140 N.C. 350, 52 S.E. 728; *Powers v. Rosenbloom,* 143 Me. 361, 62 A. 2d 531. These remedies, in respect of the basis for determining defendant's recovery, alternative and inconsistent, are mutually exclusive. Williston on Sales, Revised Edition, Sec. 612.

The judgment is predicated solely on the adjudication that defendant was entitled to rescind and did rescind his contract with plaintiff and defendant's recovery is that applicable in an action for rescission.

Ordinarily, the buyer waives and loses the right to rescind if he continues to use the chattel for the purposes for which it was purchased and designed after he discovers or has reasonable opportunity to discover the defect. 46 Am. Jur., Sales Sec. 765; 77 C.J.S. Sales Sec. 345 (d) ; Annotations: 77 A.L.R. 1165, 1167; 41 A.L.R. 2d 1173, 1177.

In *Hendrix v. Motors, Inc. supra,* this Court approved, as in accord with North Carolina decisions, the following excerpt from the opinion of *Furches, J.,* in *Manufacturing Co. v. Gray,* 124 N.C. 322, 325, 32 S.E. 718, viz.:

"The purchaser is not compelled in all cases to reject the property,

at once, upon its receipt; if it is machinery, he has a reasonable time to operate the machinery for the purpose of testing it. But when this is done, and it is found that the machine or the machinery does not fill the specifications of the contract and warranty, he must then abandon the contract and refuse to accept and use the property; and if he does not do this, but continues the possession and use of the property, he will be deemed in law to have accepted the property, and his relief then will be an action for damages upon the breach of the warranty."

The evidence relevant to defendant's right to rescind, considered in the light most favorable to defendant, tends to show these facts:

1. *Time and method of installation.* A new house was being constructed for defendant. After delivery, the unit, crated, remained "for quite some time" on the porch. It was not uncrated until after Smith, defendant's electrician, had installed the house wiring. Then, "someone set it up in the basement." Smith, who connected the unit, testified: "This was a complete unit in itself, requiring no work inside the unit, and all that was necessary to put it into operation was to connect up the outside wiring." Defendant testified: "The furnace part of the unit was hooked up first, . . ." Later, the air conditioning part of the unit was connected; but there is no evidence as to when and by whom this connection was made.

2. *Nature of defect.* Defendant testified: ". . . every now and then the furnace would cut off and it wouldn't start up again until I had pressed two buttons on the furnace." Again: "It just cuts off when it ought not do so, . . . Sometimes it will run a week without cutting off and then sometimes it will cut off two or three times a day. It cut off in the bitter cold spells of this past (1958) Winter and I woke up to a cold house." Again: "This has been going on ever since we moved, both as to heating and cooling. It acts worse in extreme cold weather and repeatedly went off during the extreme cold weather last (1958) winter." Smith testified: "It would cut off and you would have to press the relay button to start it up again."

3. *As to tender.* The unit "was turned on while the house was being built to help dry out the walls. It started to give trouble at once." Between then, early in 1956, and May, 1956, when defendant moved into the house, neither plaintiff's representatives nor electricians employed by defendant, despite repeated efforts, were able to fix it. Defendant testified: "These people from Hajoca came down to try to fix the furnace before I had moved in. They didn't come back after I had moved in, and I had to call Mr. Smith and those Laurinburg electric people to try to fix the furnace when the Hajoca people didn't come back." The last dealings between plaintiff and defendant were

in May, 1956. Defendant testified: "I told them—Mr. Ottman—the furnace was no good and that I wanted a new unit or my money back and further, that I was not going to pay my bill until they did what was right. I also later told Mr. Jennings the same thing." Again: ". . . I told him (Mr. Ottman) then the unit did not work, was no good, and that it should either be fixed by them or I wanted a new unit or my money back. I also told him I would not pay my bill until this was done. He later (in May, 1956) sent some switches but these did no good."

4. *As to retention and use.* Defendant (April, 1958) testified: "I have used this heating and air-conditioning unit all of the time since it was installed. I do not have any other one to heat my house in Winter or to cool it in Summer. I am still using it, and it is in use at my house now." Upon oral argument in this Court, it was stated frankly by defendant's counsel that defendant has continued to use the unit pending appeal.

It is noted that no complaint was made as to the heating or air conditioning provided by this unit *while in operation.* The defect related solely to the automatic control.

The evidence for defendant tends to show that until May, 1956, plaintiff made several unsuccessful attempts to discover the cause of the defect in the automatic control and to remedy such defect. Defendant's retention and use of the unit until May, 1956, when plaintiff discontinued such efforts, would not bar defendant from electing then to rescind the contract and demand the return of the purchase price.

In May, 1956, defendant had discovered and was fully aware of the defect in the automatic control.

Appellee cites *Rohland v. International Harvester Co. of America,* 182 Okla. 200, 76 P. 2d 1078, holding that a purchaser does not waive his right to rescind the contract for breach of warranty "where the retention was at the instance and request of the seller and for the benefit of the seller in his endeavors to remedy the defective machine so that it would properly perform the functions for which it was warranted and sold." See, 77 C.J.S., Sales 345(b). Application of this rule to the facts of the present case simply means that defendant's retention and use of the unit until May, 1956, did not constitute a waiver of his right to rescind the contract.

We pass, without decision, whether defendant's statements to plaintiff in May, 1956, were sufficient to constitute notice of an election to rescind. 46 Am. Jur., Sales Sec. 763; 17 C.J.S., Contracts Secs. 434, 435. It is noted that defendant gave no notice that *he had discontinued use of the unit* or that he held it for plaintiff and subject to its instructions. It is noted further that defendant did not allege that he

had tendered possession of the unit to plaintiff prior to the tender made in paragraph (10) of the counterclaim. If it be conceded that defendant gave sufficient notice of an election to rescind, the legal effect thereof was nullified when he continued to use the unit for his own benefit and not merely in compliance with his duty as bailee of plaintiff. Annotations: 77 A.L.R. 1165, 1178; 41 A.L.R. 2d 1173 1185.

While defendant's evidence tends to show that the defect in the automatic control caused considerable inconvenience and dissatisfaction, the fact remains that since May, 1956, the unit has been in operation in defendant's home and has provided both heat and air conditioning for defendant. This continued use of the unit by defendant, for his own use and benefit, is wholly inconsistent with the concept that his possession was that of bailee of plaintiff. See *Critcher v. Porter Co.,* 135 N.C. 542, 47 S.E. 604.

All that was required to put the unit in operation was to connect it with the outside wiring. Conversely, all that was required to discontinue it from operation was to disconnect it from the outside wiring.

Appellee relies strongly on *Holland Furnace Co. v. Korth,* 43 Wash. 2d 618, 262 P. 2d 772, 41 A.L.R. 2d 1166, where it was held, in the circumstances then considered, that the continued use of the furnace did not bar the remedy of rescission. Suffice to say, the opinion in that case discloses a substantially different factual situation.

Our conclusion is that the evidence does not support the finding (No. 6) that there was a *total* failure of consideration, *Cooley v. Stoeffler,* 120 Ind. A. 617, 91 N.E. 2d 653, or the findings (Nos. 7 and 8) to the effect that defendant was entitled to rescind and did rescind the contract. Hence, a new trial is awarded.

No question is presented as to the sufficiency of defendant's allegations or evidence to support a recovery of damages for breach of warranty. See *Hill v. Parker,* 248 N.C. 662, 104 S.E. 2d 848. Even so defendant may desire to ask leave to amend his pleading so as to draw the pertinent issues into clearer focus.

New trial.

JOHNSON AND PARKER, JJ., not sitting.