WESTERN ELECTRIC COMPANY,
Incorporated, Plaintiff,

v.

WILLIAM SALES COMPANY,
Incorporated, Defendant.

No. C-72-WS-63.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Dec. 8, 1964.

W. P. Sandridge, Jr., of Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., and Peter J. Lumia, New York City, for plaintiff.

Hamilton C. Horton, Jr., of Craige, Brawley, Lucas & Horton, Winston-Salem, N. C., and H. Wayne Unger, of Jefferies, McLeod, Unger & Fraser, Walterboro, S. C., for defendant.

GORDON, District Judge.

In this action, the plaintiff seeks, in accordance with the prayer of the complaint, the sum of $16,410.68 with interest and reasonable storage rental by reason of defective plywood panels furnished by the defendant to the plaintiff. The case was tried before the undersigned Judge without a jury.

At the conclusion of the evidence of the plaintiff, the defendant moved to dismiss the action for reasons, among others, that the plaintiff had shown upon the facts and law no grounds for relief. The Court denied this motion, and the defendant then proceeded to place into the evidence a deposition, but before completion of the reading of the deposition into the evidence, defendant moved to withdraw the deposition and to have the same stricken from the evidence. The motion of the defendant in this respect was allowed. Counsel for the defendant then announced that the defendant in view of the evidence offered by the plaintiff and the refusal of the plaintiff to elect its remedy, would put on no evidence and renewed the motion to dismiss. This motion was denied.

The Court then advised that it would render a decision after receipt and study of briefs and proposed findings of fact and conclusions of law, which were directed filed with the Court within a stated time.

The pleadings, exhibits, testimony, briefs, proposed findings of fact and conclusions of law and arguments of counsel have been carefully considered and studied, and pursuant to Rule 52 of the Federal Rules of Civil Procedure, Findings of Fact and Conclusions of Law are made as follows:

### FINDINGS OF FACT

The defendant is a corporation engaged in the sales of lumber and plywood, and did not manufacture the plywood which is the subject of this suit but merely served as sales agent. The plywood was actually manufactured by Howell Plywood Corporation, Dothan, Alabama.

In this action, the plywood (sometimes referred to during the trial as lumber core panels) was purchased from the defendant under fourteen separate purchase orders, with each order specifying the price, dimensions and detailed manufacturing specifications, only two of the fourteen orders being identical as to price, dimensions and manufacturing specifications.

The plaintiff placed purchase orders with the defendant on July 7, August 4, September 9, September 10, September 12 and September 13, 1960. Each purchase order was accepted by the defendant according to the terms specified in the purchase order.

Under the fourteen separate purchase orders, delivery was made by different shipments from the manufacturer at Dothan, Alabama, to two different locations for the plaintiff, the plaintiff's Kearney, New Jersey, Plant and Queensboro, New York, Plant.

The plaintiff placed additional purchase orders with the defendant on November 1, 1960, but these orders were cancelled prior to acceptance and this suit is not concerned with the November 1, 1960, orders as no claim is made thereto.

Each individual purchase order constituted a separate and separable contract, and each purchase order constituted a contract between the parties, the terms of which were specified in the respective purchase orders placed by plaintiff. The provisions of Commercial Standard C.S. 35–56, U.S. Department of Commerce, by reference thereto in each purchase order, were incorporated into the terms and provisions of each purchase order. C.S. 35–56 seeks to estab-

lish and provide uniform standards in the hardwood plywood industry and pertinent provisions thereof are:

"7.1 All hardwood, plywood guaranteed to conform to this Commercial Standard is sold subject to inspection in the white only, and prior to fabrication. Complaints regarding the quality of any shipment must be made within fifteen days from receipt thereof."

"3.1 Workmanship—All plywood sold as of Commercial Standard quality shall be well manufactured and free from characteristics and defects not specifically permitted in the rules for the various grades."

The defendant, upon receipt and acceptance of a purchase order from the plaintiff, made its own purchase order to Howell Plywood Company, specifying in its purchase order to Howell Plywood Company the identical specifications contained in the purchase order from the plaintiff. Shipment was made directly by Howell Plywood Company to either the plaintiff's Queensboro Plant or Kearney Plant, as directed in the purchase order. The various shipments under the orders were received by the plaintiff at its two plants during the period between September 30, 1960, and November 23, 1960, and were inspected visually by the plaintiff upon receipt and stored for use by the plaintiff in such manner that there was an intermingling of the panels as to respective orders, and were stored so that witnesses who testified as to the condition of the panels in storage could not associate the panels with a particular purchase order.

The panels were shipped "in the white" as raw, untreated lumber materials under varying specifications, some oak face and some mahogany face, with variations as to dimensions and price. No defects were noted in the panels at the time they arrived at the plaintiff's plants, but upon attempt by the plaintiff to fabricate the panels defects began to appear in some of the panels. These defects were in the form of warping, checking or cracking of the panel cores and twisting.

The panels were shipped in bound bundles of fifty and many of the panels, the exact number not shown by the evidence, remain in the original shipping binders and were never opened for inspection. An undetermined, but substantial, number of panels have been used from various orders.

Plaintiff's inspection of the panels consisted of picking at random a limited number of panels, and the evidence does not reflect the number of panels found defective nor is the evidence regarding defective panels associated with a particular purchase order by reason of the intermingling of the orders.

No claim is made by plaintiff that panels received at the Queensboro Plant on September 30, 1960, and at the Kearney Plant on October 3, 1960, are defective, September 30 and October 3, 1960, being the dates of arrival of the first shipments at each location. In addition the aforementioned shipments, panels were received either at the Kearney Plant or Queensboro Plant on the following dates: October 24, 1960; October 31, 1960; November 22, 1960; and November 23, 1960.

On or about November 3, 1960, plaintiff complained to the defendant about the defective panels and subsequently, on or about November 8, 1960, officials of the defendant came to the plaintiff's plant and inspected the panels. It was agreed that plaintiff would attempt to fabricate 100 panels and report to the defendant the result, and the plaintiff subsequently reported to the defendant that it experienced difficulty and could not use the panels. On November 29, 1960, plaintiff wrote to defendant a letter, and by the terms of the letter stated that the plaintiff was rejecting the entire quantity of panels received on October 31, 1960, stating that an endeavor had been made to process the panels and such could not be done. Two additional letters were written by the plaintiff to the defendant, both letters dated December 21, 1960, in which letters panels were rejected by reference to specific orders.

Even though the plaintiff was contending that the panels were defective, it nevertheless made payment in full therefor to the defendant. Payments for all the orders were made by the plaintiff to the defendant by checks issued between October 11, 1960, and December 22, 1960. The amounts of the checks for the payments they represented covered various invoices and deliveries, and the payments in each case were made by the plaintiff to the defendant approximately thirty days after receipt of the panels, inspection thereof and knowledge of the defects claimed by the plaintiff.

It is concluded that some defective panels, not reasonably suitable or fit for the contemplated use of the plaintiff, were furnished the plaintiff by the defendant but the evidence presented by the plaintiff is lacking in probative facts upon which the Court can determine the number of panels defective, relating to a particular order or otherwise, or can determine the monetary value of the defective panels. Photographs were introduced by the plaintiff into the evidence to illustrate testimony of various witnesses offered which are convincing that the panels claimed by the plaintiff to be defective for its use would have a fair market value for use other than that for which the plaintiff purchased the same. Further, the Court cannot find from the evidence that all of the panels furnished, many yet in the original binders, were not fit for use by the plaintiff. In fact the evidence is that some of the panels were fabricated by the plaintiff.

During the initial negotiations and prior to the first purchase order, the plaintiff advised the defendant that the plaintiff wanted a furniture or switchboard type panel and showed to the defendant a panel of the general type required by the plaintiff.

### DISCUSSION

The parties agree that the substantive law of the State of North Carolina is applicable, and have accordingly so stipulated in the pre-trial order made a part of the trial record.

■ Where goods are sold and delivered and upon delivery are not as warranted or in accordance with the agreement, then the buyer has the right either to rescind and recover the purchase price, if any paid, or to affirm the contract and recover damages. The buyer cannot both affirm and repudiate, that is, accept part of the shipment and reject the remainder. Hajoca Corporation v. Brooks, 249 N.C. 10, 105 S.E.2d 123 (1958); J. W. Sanders Cotton Mill v. Capps, D.C., 104 F.Supp. 617 (E.D.N.C.1952); Hendrix v. B & L Motors, Inc., 241 N.C. 644, 86 S.E.2d 448 (1955).

■ From the facts found, the plaintiff, Western Electric Company, inspected the plywood, accepted and stored it, exercised custody and control over the same, used some of the panels, paid for the panels in their entirety after notice to the defendant both verbally and in writing of the defects of which it complained and the Court concludes that the plaintiff, Western Electric Company, has now waived its right to rescind as to each of the contracts.

In the complaint the plaintiff prays for damages, but in the pretrial order and presentation of the evidence, it appears that the plaintiff was proceeding on the theory of recision if the evidence reflected that the plaintiff was so entitled, and to damages if a case for recision were not proved. Rule 54(c), Federal Rules of Civil Procedure, states that a party is to be granted any relief to which he is entitled even though he has not demanded it. Moore's Federal Practice, Second Edition, Vol. 2, § 8.14. No amendment was offered during the course of the trial to the complaint, and the Court in accordance with the findings of fact is of the opinion that the remedy of the plaintiff is exclusively that of damages.

■ The Court has found from the facts that the defendant was told that a furniture or switchboard type panel was required and plaintiff showed the defendant the general type panel needed; that the evidence shows that some of the panels furnished were defective in that

they were warped, twisted and cracked and not reasonably fit or suitable for the contemplated purposes of the plaintiff; that the defendant was cognizant of the use to which the panels would be put by the plaintiff. When a buyer purchases goods for a particular purpose, which purpose the seller is acquainted with expressly or impliedly, and the buyer relies on the skill, judgment or experience of the seller for the suitability of the goods for that purpose, there is an implied warranty that the goods are reasonably fit for the particular purpose, and the seller is liable for such damages as proximately result from a breach of the warranty. Southern Box and Lumber Co. v. Home Chair Co., Inc., 250 N.C. 71, 108 S.E.2d 70 (1959).

The measure of damages ordinarily recoverable for breach of warranty of personal property is the difference between the reasonable market value of the article as warranted and as delivered, with such special damages as were within the contemplation of the parties. Troitino v. Goodman, 225 N.C. 406, 35 S.E.2d 277 (1945).

It is axiomatic that the plaintiff must establish and prove every material fact essential to the establishment of a cause of action in its favor. In this respect, it was incumbent upon the plaintiff to prove by the greater weight of the evidence the warranty, a breach of the warranty and resulting damages. The plaintiff introduced no evidence upon which the Court can base a monetary value as to any specific number of panels claimed defective and unusable. A computation of damages for breach of warranty cannot be made unless the number of unfit panels of each description is given the Court along with the difference in the value as warranted and the value at the time of delivery. The plaintiff has failed to sustain the burden of proof on the essential element of damage. Van Gelder Yarn Co. v. Mauney, 228 N.C. 99, 44 S.E.2d 601 (1947).

Nevertheless, the evidence shows that the defendant breached its warranty, and therefore the plaintiff is entitled to nominal damages. Rule 54(d) Federal Rules of Civil Procedure, in essence provides that cost shall be awarded the "prevailing party unless the court otherwise directs." On the facts in this case, the Court holds that the plaintiff is the prevailing party and that the defendant be taxed with the cost. Bowman v. West Disinfecting Co., 2 Cir., 25 F.R.D. 280 (1960); Homestead Mining Co. v. Mid-Continent Exploration Co., 10 Cir., 282 F.2d 787 (1960).

## CONCLUSIONS OF LAW

1. The case in its substantive features is controlled by the law of the State of North Carolina.

2. The defendant impliedly warranted that the plywood panels were reasonably fit for the contemplated purposes of the plaintiff and there was a breach of implied warranty by the defendant.

3. Each individual purchase order constituted a separate and separable contract between the parties.

4. The plaintiff had the burden of proof on every fact essential to the establishment of its cause of action including, but not limited to, proof of damages under each separate order. The plaintiff failed to carry the burden of showing facts upon which an award of damages for breach of warranty can be based or computed.

5. With respect to recision of the individual orders, the plaintiff inspected the panels upon receipt, accepted and stored the same for fabrication and did fabricate and use an undetermined but substantial number of the panels, retained possession of the panels, and paid the defendant the entire purchase price after notice and complaint to the defendant about defects in the panels. Therefore, the plaintiff is precluded from rescinding the agreement as to each order.

6. The plaintiff has proved that an unspecified number of panels received were not reasonably fit for its use in its particular method of manufacture, but has failed to carry the burden of proof

78

that the panels were not suitable for use otherwise.

The plaintiff is entitled to recover from the defendant nominal damages only of One Dollar ($1.00), together with its costs herein expended.

An appropriate judgment will be accordingly entered.