RALPH W. DAVIS v. VINTAGE ENTERPRISES, INC. AND RALPH W. DAVIS v. COLONIAL MOBILE HOMES, INC.

Nos. 7423DC741 and 7423DC819

(Filed 20 November 1974)

1. **Rules of Civil Procedure § 52— trial without jury — duty of judge to find facts and state conclusions**

   When the judge tries a case without a jury he must find the facts specially and state separately his conclusions of law and thereby determine the issues raised by the pleadings and the evidence. G.S. 1A-1, Rule 52.

2. **Uniform Commercial Code §§ 11, 15— merchant as to mobile homes — implied warranty of merchantability**

   Defendant was a merchant with respect to the sale of mobile homes, and the contract of sale executed by defendant contained no language, as permitted by G.S. 25-2-316, excluding or modifying the implied warranty of merchantability; therefore, the sale which is the

subject of this action carried with it an implied warranty that the mobile home was fit for the purpose for which such goods are ordinarily used, i.e., residential purposes. G.S. 25-2-314(1), (2).

**3. Uniform Commercial Code § 19— delivery of mobile home — inspection after trailer set up**

Though there is no implied warranty when the buyer, before entering into the contract, examines the goods as fully as he desires and has knowledge equal to that of the seller, that principle was not applicable in this case since the contract of sale imposed upon the seller the obligation to deliver the mobile home and to set it up on plaintiff's lot, and fitness or unfitness for use as a home could not be ascertained by the buyer's examination and inspection until the trailer was set up; moreover, plaintiff was entitled to a reasonable time after delivery to inspect the trailer and reject it, and plaintiff's full payment in cash at the time of purchase would not impair his right to inspect following delivery. G.S. 25-2-513(1); G.S. 25-2-512(2).

**4. Uniform Commercial Code § 20— acceptance — definition**

Acceptance is ordinarily signified, after a reasonable time to inspect the goods, by language or conduct of the buyer that the goods conform and that he will take them or that he will retain them despite the fact that they do not conform; or acceptance may also occur by failure of the buyer to make an effective rejection after a reasonable opportunity to inspect. G.S. 25-2-606(1)(a) and (b).

**5. Uniform Commercial Code § 20— effective rejection — requisites**

Effective rejection means (1) rejection within a reasonable time after delivery or tender and (2) seasonable notice to the seller. G.S. 25-2-602.

**6. Uniform Commercial Code § 20— acceptance with knowledge of nonconformity — revocation of acceptance**

The buyer may revoke his acceptance made with knowledge of a nonconformity if (1) the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured and (2) the nonconformity substantially impairs the value of the goods.

**7. Uniform Commercial Code § 21— revocation of acceptance — damages for breach of warranty — election by buyer not required**

A buyer who revokes his acceptance is not required to elect between revocation of acceptance on the one hand and recovery of damages for breach of implied warranty of fitness on the other; rather, both remedies are available to him. G.S. 25-2-608.

**8. Uniform Commercial Code § 20— sale of mobile home — rejection by buyer — breach of warranty by seller**

The breach of contract action is remanded for a determination as to whether plaintiff seasonably rejected the mobile home in question and notified defendant of such rejection, or upon a finding that plaintiff did not reject and did not revoke his acceptance, whether defendant breached its implied warranty of fitness.

APPEAL by plaintiff and defendant from *Osborne, Judge,* 14 May 1974 Session of District Court held in ALLEGHANY County. Heard in the Court of Appeals on 16 October 1974.

This is a civil action wherein plaintiff, Ralph W. Davis, seeks to recover damages from the defendant, Colonial Mobile Homes, Inc., a subsidiary of Vintage Enterprises, Inc., for an alleged breach of contract for the sale of a mobile home.

Separate but substantially identical records were filed in this court by the plaintiff and the defendant. At the trial before the judge without a jury the parties offered evidence tending to show the following:

On 18 May 1973 plaintiff purchased a mobile home from the defendant. He paid cash for the mobile home and signed a contract providing for the defendant to deliver the trailer to plaintiff's lot near Sparta, N. C., and set it upon blocks. The defendant delivered the mobile home on 7 June 1973. Although the plaintiff had furnished sufficient blocks to level the trailer, the defendant did not completely level the mobile home until 12 June 1973. When the defendant transported the mobile home from Yadkinville to the plaintiff's lot, the right rear tire on the mobile home was flat. The defendant's driver stated, "We pulled it up the mountain that way." When plaintiff's neighbor, who was present at the time the mobile home was delivered, said, "You had a little bump up, didn't you?" and asked what was wrong with the top of the trailer, the driver replied, "We had a little bump up." Plaintiff made several calls to Mr. Joey Odell, district manager for defendant, but was unable to obtain keys for the trailer until three weeks after it had been delivered.

When plaintiff was finally able to get inside the trailer he

" . . . found that the cabinets were out of line, the door to the refrigerator was out of line and would not make a tight seal, and the outer edge of the door of the refrigerator was about a quarter-inch higher than the top of the refrigerator. The windows would not shut a tight seal, and the front door would not stay shut. When you would shut the front door, the walls would vibrate just like the studding had been torn completely loose from the rafters. Along the upper edge and the right rear corner of the outside of the mobile home, you could stick your fist up between the panelling [sic] and the frame of the trailer. On the bottom at the right rear corner, the metal exterior was bent out

of shape and pulled away from the frame. There was an indentation less than ¼ inch deep in the left front corner of the frame and the 'I' beam running under the chassis was completely warped. The 'I' beam on the left-hand side was twisted and bent and bowed out. The windows wouldn't shut, the floors were buckled, and the rafters on the top were warped and bent out of shape; they were warped into a kindly 'S' shape."

Plaintiff further testified that "[w]hen it rained the floors . . . flooded. Water ran out from under the panelling [sic] into the inside. My daughter packed towels and stuff under the panelling [sic] to keep water out of the shoes. After about an hour, the circuit breakers in the electrical panels started flickering off, so I pulled the main switch. There was water all over the floors, in the hall and kitchen, bathroom and both bedrooms. After each rain, water would drain from the walls for from one to three hours—from between the outer aluminum skin and the inner walls."

Although the plaintiff did not want to move into the mobile home after he inspected it, he had already given his landlord a thirty-day notice of his intention to move and could not find any other place to live. He made numerous calls to the defendant about the condition of the trailer, but the defendant would not respond or return any of his calls. An employee of the defendant did, however, go to the plaintiff's trailer on several occasions; but he did not make any substantial repairs. Finally, plaintiff complained to the Consumer Protection Division of the Attorney General's Office. Soon thereafter he contacted an attorney. On 3 July 1973 the plaintiff's attorney wrote a letter to the defendant wherein he stated that the mobile home was "badly damaged and unfit for use or occupency . . . [and] was literally shaken to pieces and damaged beyond use or repair" because it had been pulled to plaintiff's property on a flat tire. He "demand[ed] immediate replacement of said mobile home; or, in the alternative, a refund of all money paid to your company . . . [and] tendered a return of said mobile home." On 29 July 1973 five or six employees of the defendant inspected plaintiff's trailer. When one of the servicemen began to make repairs, however, the plaintiff refused to have any work performed on the mobile home. The plaintiff moved out of the trailer about the third week of September 1973, and the trailer has been unoccupied since that time. On 28 February 1974 a high wind blew the trailer off its blocks.

The trial judge made findings and conclusions which, except where quoted, are summarized as follows:

The plaintiff purchased a mobile home from the defendant for $5,359.90. The home was delivered to the plaintiff's lot but was not properly set up as provided in the sales contract. At the time of delivery the mobile home had some small dents on its exterior, a defective water heater which was replaced by the defendant, a number of doors and windows that would not operate properly, a slightly warped frame, a slight crack in the tile across the kitchen floor, and a flat tire. The defendant failed to deliver keys to the plaintiff for about two weeks after delivery of the trailer, and the plaintiff lived in the mobile home for about ninety days. During the time plaintiff lived in the mobile home, the trailer developed a number of leaks. One such leak caused the circuit breaker to short out and cut off the electricity to the trailer. On 29 July 1973 the plaintiff refused to allow the defendant's workmen to make repairs and adjustments to the mobile home. The defendant, on four previous occasions, had sent an employee to repair the mobile home. The plaintiff moved out of the trailer and since that time it has been blown onto the ground by a high wind.

The court concluded that the "plaintiff . . . [had] suffered a loss of in the fair market value of his said mobile home of $900.00, as a result of defects apparent on delivery or shortly thereafter, which said defects were not present or apparent at the time plaintiff purchased said mobile home at defendant's place of business at Yadkinville, North Carolina." It further concluded that the [d]efendant . . . [had] breached its express and implied contract to deliver said mobile home to the plaintiff in a new condition and without substantial defects, and [that the] plaintiff [had] been damaged on account thereof in the sum of $900.00."

From a judgment entered in favor of the plaintiff for $900.00, both parties appealed.

*Edmund I. Adams for plaintiff appellant.*

*Arnold L. Young for defendant appellant.*

HEDRICK, Judge.

[1] When the judge tries a case without a jury, he must find the facts specially and state separately his conclusions of law

and thereby determine the issues raised by the pleadings and the evidence. G.S. 1A-1, Rule 52, Rules of Civil Procedure. When this is done, the appellate court can review the case to determine whether there is competent evidence in the record to support the facts found and whether the judge correctly applied to those facts the appropriate legal principles. Suffice it to say, the findings and conclusions made by the trial judge in this case do not properly determine the issues raised by the pleadings and the evidence. In his complaint the plaintiff alleged the following:

> "Plaintiff's damages have been caused solely and exclusively by defendant's breach of its said contract with plaintiff, defendant's actions in negligently damaging said mobile home, and defendant's breach of warranty. Plaintiff has tendered the return of said mobile home to defendant and demanded damages and immediate repayment of all funds paid by plaintiff to defendant, but defendant has failed and refused to do so."

The allegations in the complaint and the evidence require consideration of the Uniform Commercial Code. See *Motors, Inc. v. Allen,* 280 N.C. 385, 186 S.E. 2d 161 (1972).

[2]    The ordinary purpose for which a mobile home is used is residential. Here, the mobile home was sold and purchased for that purpose. "Unless excluded or modified (§ 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . . (2) Goods to be merchantable must be at least such as . . . (c) are fit for the ordinary purposes for which such goods are used . . . . " G.S. 25-2-314(1), (2). Defendant is a merchant with respect to the sale of mobile homes, and the contract of sale executed by defendant contains no language, as permitted by G.S. 25-2-316, excluding or modifying the implied warranty of merchantability. Hence, the sale under discussion carried with it an implied warranty that the mobile home was fit for the purpose for which such goods are ordinarily used, i.e., residential purposes.

[3]    While there is no implied warranty when the buyer, before entering into the contract, examines the goods as fully as he desires, G.S. 25-2-316(3)(b), and has knowledge equal to that of the seller, *Driver v. Snow,* 245 N.C. 223, 95 S.E. 2d 519 (1956), this principle is not applicable to the facts here because

the contract of sale imposed on the seller the obligation to deliver the mobile home and set it up on plaintiff's lot. Until that was properly done, fitness or unfitness for use as a home could not be ascertained by the buyer's examination and inspection of the goods on the seller's premises. Unless otherwise agreed, "[w]hen the seller is required . . . to send the goods to the buyer, the inspection may be after their arrival," G.S. 25-2-513(1); and the buyer is entitled to a reasonable time after the goods arrive at their destination in which to inspect them and to reject them if they do not comply with the contract. *Parker v. Fenwick,* 138 N.C. 209, 50 S.E. 627 (1905). Moreover, plaintiff's cash payment would not impair his right to inspect following delivery. G.S. 25-2-512(2). Here, delivery was not accomplished until defendant set up the mobile home on plaintiff's lot.

What remedies are available to defendant for breach of implied warranty of fitness? The answer to this question turns on whether defendant *accepted* the mobile home. This requires consideration of the Uniform Commercial Code's concept of rejection, acceptance, and revocation of acceptance.

[4-7]    Acceptance is ordinarily signified, after a reasonable time to inspect the goods, by language or conduct of the buyer that the goods conform and that he will take them or that he will retain them despite the fact that they do not conform. G.S. 25-2-606(1)(a). Acceptance may also occur by failure of the buyer "to make an effective rejection" after a reasonable opportunity to inspect. G.S. 25-2-606(1)(b). Effective rejection means (1) rejection within a reasonable time after delivery or tender and (2) seasonable notice to the seller. G.S. 25-2-602. Acceptance precludes rejection of the goods accepted and, if made with knowledge of a nonconformity, cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured. G.S. 25-2-607(2). Thus, the buyer may *revoke his acceptance* if (1) "the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured," G.S. 25-2-607(2), and (2) the nonconformity substantially impairs the value of the goods. G.S. 25-2-608(1). Revocation of acceptance must be made within a reasonable time after the buyer discovers, or should have discovered, the ground for it, *Hajoca Corp. v. Brooks,* 249 N.C. 10, 105 S.E. 2d 123 (1958), and it is not effective until the buyer notifies the seller of it. G.S. 25-2-608(2). A buyer who

so revokes his acceptance is no longer required to elect between revocation of acceptance on the one hand and recovery of damages for breach of implied warranty of fitness on the other. Both remedies are now available to him. G.S. 25-2-608.

[8]   The pleadings and the evidence in this case raise an issue as to whether the plaintiff seasonably rejected the mobile home and notified the defendant of such rejection. While the plaintiff did not allege that he revoked his acceptance of the mobile home, the evidence raises this issue also; and, if the court should conclude that the plaintiff did not reject the goods, it then should consider whether the plaintiff justifiably revoked his acceptance. Evidence of the condition of the trailer at the time it was delivered to plaintiff's lot, failure of the defendant to deliver the keys for three (3) weeks so that plaintiff could inspect the trailer, the letter written by plaintiff's attorney to the defendant, the plaintiff's occupancy of the trailer for approximately ten (10) weeks with or without knowledge of the defects, defendant's failure to make timely repairs, plaintiff's refusal to let defendant make repairs, and plaintiff's abandonment—are some of the circumstances to be considered in determining whether plaintiff seasonably rejected the trailer or justifiably revoked his acceptance thereof.

If plaintiff (1) made an effective rejection of the mobile home or (2) justifiably revoked his acceptance of it, he has a right to recover "so much of the price as has been paid" plus any incidental and consequential damages he is able to prove. G.S. 25-2-711(1) ; G.S. 25-2-715; *Motors, Inc. v. Allen, supra.* If the court should conclude that the plaintiff did not reject and did not revoke his acceptance, it then would be necessary for the court to consider the final issue raised by the pleadings and the evidence, i.e., whether the defendant breached its implied warranty of fitness. The measure of damages in that event is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show damages of a different amount," G.S. 25-2-714(2), plus incidental damages and such consequential damages as were within the contemplation of the parties. G.S. 25-2-715; *Motors, Inc. v. Allen, supra; Hendrix v. Motors, Inc.,* 241 N.C. 644, 86 S.E. 2d 448 (1955) ; *Harris v. Canady,* 236 N.C. 613, 73 S.E. 2d 559 (1952).

The parties may be permitted to amend their pleadings, if they so desire, to conform them to the evidence. G.S. 1A-1, Rule 15, Rules of Civil Procedure.

Therefore, the judgment entered is vacated, and the cause is remanded to the district court for a new trial in accordance with this opinion.

Vacated and remanded.

Judges MORRIS and BALEY concur.